**WHEATON GLASS COMPANY, A DIVISION OF WHEATON INDUSTRIES, a New Jersey Corporation, Plaintiff,**

v.

**PHARMEX, INC., doing business as Pharmex, Ltd., a Delaware Corporation, Defendant,**

**and**

**PHARMEX, INC., doing business as Pharmex, Ltd., a Delaware Corporation, Plaintiff,**

v.

**POLY–SEAL CORPORATION, Defendant.**

Civ. A. Nos. 80–1152, 82–0375.

United States District Court, D. New Jersey.

Oct. 15, 1982.

Archer, Greiner & Read, P.A. by Robert T. Lehman, Haddonfield, N.J., for plaintiff, Wheaton Glass Co.

Fratto, Little, Alessi & Abbott by John A. Fratto, Barrington, N.J., for plaintiff, Wheaton Glass Co., on the counterclaim.

Brown, Connery, Kulp, Willie, Purnell & Greene by Michael J. Vassalotti, Camden, N.J., for defendant and plaintiff, Pharmex, Inc.

Montano, Summers, Mullen & Manuel, P.A. by G. Wesley Manuel, Jr., Cherry Hill, N.J., for defendant, Poly-Seal Corp.

## OPINION

COHEN, Senior District Judge:

This matter is presently before the Court on the motion of plaintiff, Wheaton Glass Company (Wheaton), for partial summary judgment, pursuant to Fed.R.Civ.P. 56, and on the motion of defendant, Poly-Seal Corporation (Poly-Seal), to dismiss the complaint brought against it for lack of subject matter jurisdiction, pursuant to Fed.R. Civ.P. 12(b).

## FACTS

Between September 1976 and December 1979, Wheaton sold to Pharmex, Inc. (Pharmex) over two million glass bottles. Negotiations between Wheaton and Pharmex regarding purchase of the bottles began in July of 1976. On September 13, 1976, Wheaton received Pharmex's purchase order (P.O. 6758) for 216,000 bottles and on September 29, 1976, Wheaton shipped 50,-400 bottles to Pharmex. At the same time, or shortly thereafter, Wheaton sent to Pharmex an "Order-Billing" form covering the 50,400 bottles that were shipped.[1]

Wheaton instituted this action on April 22, 1980 to secure payment from Pharmex for a certain number of the bottles shipped. Pharmex then filed a counterclaim against Wheaton for consequential damages alleging that the bottles were defective and that the defect caused leakage of Pharmex's product from the bottles. Thereafter, Pharmex allegedly discovered that the caps put on the bottles may have also contributed to the leakage and brought an action against Poly-Seal Corporation, the cap manufacturer, for damage which was caused by these allegedly defective caps. The two actions were subsequently consolidated for the purposes of trial and pretrial discovery.

---

1. This procedure, i.e. Pharmex sending to Wheaton a purchase order and Wheaton shipping the goods to Pharmex and sending an "Order-Billing" form was repeated in each transaction between September 1976 and December 1979.

## WHEATON'S MOTION FOR PARTIAL SUMMARY JUDGMENT

The issue presented to the Court by the instant motion is whether the clause on the reverse side of Wheaton's "Order-Billing" forms,[2] which purports to limit Pharmex's right to sue for consequential damages, became a part of the contract[3] between the parties. Pharmex maintains that this condition is not part of the contract between the parties and that the contract's terms are those set forth in Pharmex's purchase orders and those supplied by the Uniform Commercial Code. Wheaton counters that the contract of sale was modified by certain terms provided in its "Order-Billing" form, including the limitation of damages provision.

The transactions involved in the present matter are governed by Article II of the Uniform Commercial Code, N.J.Stat.Ann. § 12A:2–201 (West 1962) *et seq.* The formation of a contract is addressed by § 2–206 which provides in pertinent part:

(1) Unless otherwise unambiguously indicated by the language or circumstances

(a) an offer to make a contract shall be construed as inviting acceptance in any manner and by any medium reasonable in the circumstances;

(b) an order or other offer to buy goods for prompt or current shipment shall be construed as inviting acceptance either by a prompt promise to ship or by the prompt or current shipment of conforming or non-conforming goods

. . . .

█ In the instant case, Pharmex's offer to buy goods was in the form of a purchase order. Pursuant to subsection 2–206(1)(b), set forth above, this offer invited acceptance either by a "promise to ship" or by the "current shipment" of the goods. It is not clear from the record before this Court whether Wheaton ever promised delivery of the goods or whether it simply shipped the goods to Pharmex. In either case, acceptance occurred before Pharmex received Wheaton's "Order-Billing" form containing the limitation of damages clause.[4]

Hence, the contract contained the terms included in Pharmex's purchase orders. In addition, certain terms which were not included in the orders were supplied by reference to the U.C.C. *See* § 2–207(3); Comment, *§ 2–207 of the Uniform Commercial Code, New Rules for the "Battle of the Forms,"* 32 Univ.Pitt.L.Rev. 209, 217 (1970). Among the terms supplied by the U.C.C. is the provision allowing the buyer to sue for consequential damages pursuant to § 2–715. *Air Products Chem. Inc. v. Fairbanks Morse,* 58 Wis.2d 193, 212, 206 N.W.2d 414, 424 (Sup.Ct.1973). Therefore, Pharmex's claim for consequential damages is permitted under the terms of the contract in question.

Assuming *arguendo,* that Wheaton sent the "Order-Billing" forms with each shipment and that it intended said "Order-Billing" forms to constitute its acceptance, it is still possible that the clause eliminating Pharmex's right to sue for consequential damages was not included in the contract. Section 2–207(2) provides that when an ac-

---

**2.** 5. SELLER SHALL NOT BE LIABLE FOR ANY BREACH OF THIS CONTRACT OR ORDER OR OF ANY DUTY OR OBLIGATION ARISING OUT OF OR RELATED HERETO IN ANY AMOUNT IN EXCESS OF THE CONTRACT PRICE OF THE ARTICLE WITH RESPECT TO WHICH SUCH BREACH OCCURS AND SHALL NOT BE LIABLE IN ANY EVENT FOR LOSS OF CONTENTS OR FOR SPECIAL OR CONSEQUENTIAL DAMAGES.

**3.** Although the parties entered into several contracts with identical terms, they will be referred to in the singular throughout this opinion.

**4.** Although, in the initial transaction, the shipping document that accompanied the goods and the "Order-Billing" form both were dated September 30, 1976, Pharmex alleges that it received the "Order-Billing" form after the goods were received. Since Pharmex is the non-moving party in this summary judgment motion, any question of fact must be resolved in its favor. *Small v. Seldows Stationery,* 617 F.2d 992, 994 (3d Cir. 1980). Hence, it will be assumed that Pharmex received the goods prior to the "Order-Billing" form.

ceptance states terms additional to, or different from, those in the offer, a contract has been formed in which "[t]he additional terms are to be construed as proposals for additions to the contract." According to this subsection, "[b]etween merchants such terms become part of the contract unless . . . they materially alter it . . . ." § 2–207(2). "If [the additional terms] are such as materially to alter the original bargain, they will not be included unless expressly agreed to by the other party." § 2–207, U.C.C. Comment 5. Since Pharmex's offer can be construed to include the right to sue for consequential damages, the Court must determine whether Wheaton's form which purports to limit that right materially alters the contract.

Although § 2–207, U.C.C. Comment 5 indicates that certain, reasonable limitation of remedy provisions do not materially alter a contract, there is support for the proposition that such a provision does constitute a per se material alteration. *See, Air Products & Chemical, Inc., supra; cf. Mead Corp. v. McNally v. Pittsburg Mfg. Corp.,* 654 F.2d 1197 (6th Cir. 1981) (Court concluded that a clause in the acceptance which allowed the offeree to sue for consequential damages materially altered offeror's clause precluding such an action.) However, since each case involves a different set of circumstances, this Court has adopted the view that the question of whether a limitation of remedies clause materially alters a contract is a disputed issue of material fact which must be resolved at trial. *Medical Devel. Corp. v. Industrial Molding Corp.,* 479 F.2d 345, 348 (10th Cir. 1973); *Pevar Co. v. Evans Products Co.,* 524 F.Supp. 546, 550–51 (D.Del.1981); *Ebasco Services Inc. v. Pennsylvania Power and Light Co.,* 402 F.Supp. 421, 441–43 (E.D.Pa. 1975); *cf. Dorton v. Collins & Aikman Corp.,* 453 F.2d 1161, 1169 n. 8 (6th Cir. 1972) (Court employs the same analysis regarding an arbitration clause). "[T]he materiality of a change is to be judged in large part by the expectations of the parties involved in the transaction. That is a determination uniquely within the province of a fact finder and one we are incapable of

making on a motion for summary judgment." *Ebasco,* 402 F.Supp. at 442–43.

For the foregoing reasons, plaintiff's motion for partial summary judgment must be denied.

## POLY–SEAL'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

This Court's jurisdiction over the action brought by Pharmex against Poly-Seal is allegedly based on diversity of citizenship. It has now been established that no diversity exists between Pharmex and Poly-Seal. Consequently, Poly-Seal has moved to dismiss Pharmex's complaint.

Pharmex does not dispute the fact that both plaintiff and defendant are Delaware corporations. It urges, however, that this Court should exercise its ancillary jurisdiction over the action and deny Poly-Seal's motion to dismiss. For reasons of judicial economy, we have determined that this is a proper case to utilize ancillary jurisdiction.

Ancillary jurisdiction, according to one commentator, is "an ill-defined, judicially developed concept based on the premise that a district court acquires jurisdiction over a case or controversy in its entirety and, as an incident to the disposition of a dispute that is properly before it, may exercise jurisdiction to decide other matters raised by the case over which it would not have jurisdiction were they independently presented." 6 Wright and Miller, Federal Practice and Procedure, § 1444 p. 219 (1971). The major purpose of this device is to promote judicial economy by allowing the adjudication of related claims in a single action. *Id.* at § 1414 p. 73.

The ancillary jurisdiction doctrine has even been used to circumvent the diversity requirement in certain situations. *Sheppard v. Atlantic States Gas Co.,* 167 F.2d 841, 845 (3d Cir. 1948). For example, persons brought into an action as parties to a compulsory counterclaim will come under the court's ancillary subject matter jurisdiction and the fact the presence of the additional party would destroy diversity does

not oust the court of its jurisdiction. *Markus v. Dillinger,* 191 F.Supp. 732, 735 (E.D. Pa.1961). This result is based on the theory that the diversity which supports the original action also supports the counterclaim against the non-diverse party. *Id.*

Pharmex argues that if it had added Poly-Seal as an additional defendant in its compulsory counterclaim against Wheaton, the Court's ancillary jurisdiction would have been invoked despite the fact that there was no diversity of citizenship between Pharmex and Poly-Seal. Pharmex further contends that its separate action against Poly-Seal is the equivalent of adding Poly-Seal as a defendant on the counterclaim and that this Court should, therefore, exercise ancillary jurisdiction over the suit.

Fed.R.Civ.P. 13(a) describes a compulsory counterclaim as "any claim which at the time of serving, the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction."

■ If there is a "logical relationship" between the counterclaim and the main action, the counterclaim may be considered to have arisen out of the same "transaction or occurrence," as the one upon which the initial complaint was based and, therefore, may be deemed to be a compulsory counterclaim under Rule 13(a). *Moore v. New York Cotton Exchange,* 270 U.S. 593, 610, 46 S.Ct. 367, 371, 70 L.Ed. 750 (1926); *Baker v. Gold Seal Liquors,* 417 U.S. 467, 469 n. 1, 94 S.Ct. 2504, 2506 n. 1, 41 L.Ed.2d 243 (1973); *Great Lakes Rubber Corporation v. Herbert Cooper Co.,* 286 F.2d 631, 634 (3d Cir. 1961).

[A] counterclaim is logically related to the opposing party's claim where separate trials on each of their respective claims would involve a substantial duplication of effort and time by the parties and the courts. Where multiple claims involve many of the same factual issues, or the same factual and legal issues, or where they are offshoots of the same basic controversy between the parties, fairness and considerations of convenience and economy require that the counterclaimant be permitted to maintain his cause of action.

*Great Lakes Rubber Corporation,* 286 F.2d at 634.

■ Pharmex's counterclaim against Wheaton and Wheaton's initial complaint against Pharmex are based on numerous sales of glass bottles by Wheaton to Pharmex during the period ending in approximately June 1979. The claim which Pharmex has asserted against Poly-Seal involves a different set of transactions in which Poly-Seal sold to Pharmex caps and liners for the glass bottles during the time period from 1976 to 1978. Although Pharmex's complaint against Poly-Seal relates to different transactions than its counterclaim against Wheaton, the claims are "logically related."

The adjudication of both claims will be accomplished by the single determination of whether Wheaton or Poly-Seal is individually or jointly liable for Pharmex's alleged loss. Separate trials on each of these claims would involve a substantial duplication of effort by the parties and the courts and raise the possibility of inconsistent verdicts. In the interest of better judicial housekeeping, this Court shall exercise its ancillary jurisdiction.

We note that, procedurally, this matter is unusual in that rather than adding Poly-Seal as an additional defendant on the counterclaim, Pharmex instituted a separate suit. In principle, we agree that Pharmex's separate action is the equivalent of adding Poly-Seal as an additional defendant on the counterclaim. However, to insure that we are not extending our jurisdiction beyond its legal bounds, *see, Seyler v. Steuben Motors, Inc.,* 462 F.2d 181 (3d Cir. 1972) (per curiam), our decision on this motion is predicated on the amendment of Pharmex's counterclaim to include its claim against

Poly-Seal[5] and withdrawal of Pharmex's separate action.

### CONCLUSION

In summary, Wheaton's motion for partial summary judgment shall be denied and Poly-Seal's motion to dismiss shall be denied. The Court shall prepare an appropriate order to be filed with this opinion.

5. Pharmex shall be granted leave to amend its counterclaim in the Order accompanying this opinion, pursuant to Fed.R.Civ.P. 13(f).