**SHUR–VALUE STAMPS, INC.,**
Plaintiff–Appellant,

v.

**PHILLIPS PETROLEUM COMPANY,**
Defendant–Appellee.

No. 94–2460.

United States Court of Appeals,
Eighth Circuit.

Submitted Jan. 9, 1995.

Decided March 22, 1995.

Peter G. Kumpe, Little Rock, AR, argued (Peter G. Kumpe and Thomas G. Williams, on the brief), for appellant.

William H. Sutton, Little Rock, AR, argued (William H. Sutton and John C. Fendley, Jr., on the brief), for appellee.

Before RICHARD S. ARNOLD, Chief Judge, BRIGHT, Senior Circuit Judge, and MURPHY, Circuit Judge.

BRIGHT, Senior Circuit Judge.

## I. INTRODUCTION

In this contract action, Shur–Value Stamps, Inc. (Shur–Value) brought suit against the Phillips Petroleum Company (Phillips), alleging causes of action for breach of warranty, breach of implied warranty of merchantability and breach of implied warranty of fitness for a particular purpose. This suit arose out of Shur–Value's purchase in the fall of 1991 of Phillips' K–Resin for use in the production of clear water bottles. Shur–Value contends that, notwithstanding Phillips' representations to the contrary, the K–Resin created harsh odors and tastes making the bottled water unmarketable. Shur–Value filed its complaint on July 19, 1993, almost a year and a half after the alleged breach. The matter was set for trial on May 12, 1994. On May 11, 1994, however,

the district court[1] initiated two telephone conferences between the court and counsel for both Shur–Value and Phillips. Based upon the matters discussed in the telephone conversation, the court concluded that as a matter of law Shur–Value's claim was time-barred, pursuant to the contract terms. The court then entered its order of dismissal.

Shur–Value challenges the district court's dismissal on three grounds. First, Shur–Value contends that the district court did not provide Shur–Value with sufficient notice by which it could contest the court's sua sponte summary dismissal of its claims. Second, even assuming the district court had complied with Eighth Circuit procedure in rendering its decision, Shur–Value had presented a genuine issue of material fact as to whether it had actually received Phillips' purchase order acknowledgment (POA) form and thereby accepted the POA's one-year statute of limitations restriction. Finally, Shur–Value claims that even if the district court properly determined as a matter of law that Shur–Value had received the POA, the district court erred in deciding that as a matter of law the one-year remedy provision had not materially altered the contract, pursuant to § 2.207 of the Texas Business and Commerce Code. For the following reasons, we affirm.

## II. BACKGROUND

This suit arises out of Phillips Petroleum Company's sale of K–Resin to Gold Star Dairy, a division of Shur–Value Stamps, Inc. Shur–Value is an Arkansas corporation with its principal place of business located in Little Rock, Arkansas. Phillips is a Delaware corporation with its principal place of business located in the State of Oklahoma.

Beginning in April 1991, representatives from Shur–Value met with representatives from Phillips to discuss ways of producing a clear 1.5 liter container for marketing bottled water. In those early discussions, Phillips indicated that water bottles produced with K–Resin, a product manufactured and marketed by Phillips for use in plastic blow-

---

1. The Honorable G. Thomas Eisele, Senior District Judge for the United States District Court, Eastern District of Arkansas.

molding, had previously imparted taste or odor to the water. As a result, Shur–Value commenced negotiations with other manufacturers of similar type products, looking for an alternative resin that could meet its production needs. They found none.

Several months later, in June of 1991, representatives from Shur–Value and Phillips met again at a Chicago Trade Show and discussed Shur–Value's continuing need for a product with which to blow-mold clear 1.5 liter bottles. At the show, Phillips, through its employees, allegedly represented to Shur–Value that Phillips had corrected the odor and flavor problems associated with its K–Resin.

Although the parties differ as to precisely when their discussions evolved into a contractual relationship, neither party disputes that on November 15, 1991 Shur–Value telephoned Phillips and requested shipment of 90,000 pounds of K–Resin to be delivered November 20, 1991. Phillips contends that upon receipt of this order it sent a POA form to Sure–Value confirming the purchase. The POA contained Phillips' standard terms and conditions of sale. One such term stipulated that "[a]n action for breach of this contract ... must be commenced within one year after the occurrence of the breach." Appellant's Br. at 2. Prior to sending the POA, the parties had never discussed a limitations period.

Soon after Shur–Value received the K–Resin and began producing its 1.5 liter bottles, Shur–Value complained that the K–Resin created harsh odors and tastes making the water bottled in it unmarketable. By January 6, 1992, Shur–Value had contacted Phillips concerning the problem, and the parties began working to remedy it. Their attempts, however, failed. As a result, Phillips removed the remaining K–Resin from Shur–Value's silo and refunded to Shur–Value the purchase price of the K–Resin. Not satisfied, Shur–Value then brought this action against Phillips, claiming approximately $1,300,000 in reliance damages it allegedly sustained as a result of Phillips' breach of contract. Shur–Value filed its complaint on July 19, 1993, outside the one-year limitation period set forth in the POA.

Trial had been scheduled for May 12, 1994, but on May 11, Judge Eisele initiated a telephone conference between the court and counsel for both Shur–Value and Phillips. During that telephone conference, Judge Eisele made inquiries concerning the facts each party intended to establish at trial. No motions for any type of pretrial disposition had been filed by either party.

Without objection by Shur–Value, the district court ruled as a matter of law that the one-year limitations period set forth in Phillips' POA became a part of the parties' agreement and dismissed Shur–Value's complaint because it was not filed within one year of the alleged breach. The district court memorialized its decision in a memorandum opinion and order of dismissal filed on May 13, 1994. *Shur–Value Stamps, Inc. v. Phillips Petroleum Co.*, No. LR–C–93–506 (E.D.Ark. May 13, 1994). This appeal followed.

## III. DISCUSSION

### A. Proper Procedure in Granting Summary Judgment Sua Sponte

When Judge Eisele convened the May 11, 1994 conference call, he did not immediately notify the parties that he was considering dismissing Shur–Value's claims as untimely. Instead, he began the conference call by simply noting that he had "some serious problems with the case." *Shur–Value Stamps, Inc. v. Phillips Petroleum Co.*, No. LR–C–93–506, at 2 (E.D.Ark May 11, 1994) (Telephone Conference) [hereinafter "Telephone Conference"]. Later, he expressed his concern more explicitly, noting that unless Shur–Value could prove otherwise, the POA's time-bar restriction would be considered part of the contract and that going to trial would be a waste of time. *Id.* at 19–20. Shur–Value responded by offering one Tenth Circuit case, which it claimed supported its position that the time-bar provision materially altered the contract and thus did not preclude it from raising the claims at issue here. After a one and one-half hour break, during which time Judge Eisele reviewed Shur–Val-

ue's Tenth Circuit court case, the judge decided to dismiss Shur–Value's Complaint. *Id.* at 23 (citing *Daitom, Inc. v. Pennwalt Corp.,* 741 F.2d 1569 (10th Cir.1984)). Shur–Value's counsel simply responded that he understood the trial judge's ruling. *Id.* at 24.

On appeal, Shur–Value contends that Judge Eisele violated this court's own standards for issuing a summary judgment order sua sponte. We have previously approved sua sponte orders of summary judgment, but only when the "party against whom judgment will be entered was given sufficient advance notice and an adequate opportunity to demonstrate why summary judgment should not be granted." *Interco Inc. v. National Sur. Corp.,* 900 F.2d 1264, 1269 (8th Cir.1990). According to Shur–Value, Judge Eisele provided neither sufficient advance notice nor an adequate opportunity to demonstrate that Shur–Value's contract claim was not time-barred. Specifically, Shur–Value contends that, if given enough time, it could have obtained affidavits and other materials to rebut the presumption that Shur–Value had received the POA.

■ Upon review of the record, we need not decide whether Judge Eisele committed procedural error in issuing his sua sponte summary judgment order. Instead, we hold that Shur–Value has waived any defect in notice by failing to raise an objection before the district court. A party waives the notice requirement when it fails to object based on insufficient notice and fails to assert prejudice. *Green v. White,* 693 F.2d 45, 47 (8th Cir.1982), *cert. denied,* 462 U.S. 1111, 103 S.Ct. 2464, 77 L.Ed.2d 1341 (1983); *see also Bottineau Farmers Elevator v. Woodward–Clyde Consultants,* 963 F.2d 1064, 1073 (8th Cir.1992). Although Shur–Value claims that its counsel did object and did request the district court to submit the issue to the jury, our review of the telephone conference transcript reveals no such objection.

**B. Receipt of the POA**

During the pretrial telephone conference, the trial judge inquired about the circum-

stances surrounding the mailing of the POA. Phillips responded that it intended to call Terry Jeppsen, who would testify that as a regular course of Phillips' business, a Phillips' representative would have prepared and mailed the POA to Shur–Value immediately following Shur–Value's placing of the order. Telephone Conference, at 10. Shur–Value's counsel, on the other hand, responded that he did not know when the POA was dispatched because the POA was not in Shur–Value's file and nobody at Shur–Value could remember receiving the POA. *Id.* The trial judge in the telephone conference observed, "And I am gathering from what the plaintiff is saying they don't have anyone who's going to deny it was sent but no one acknowledges having seen it and it's not in their file. Is that correct?" *Id.* at 10–11. Plaintiff's attorney replied: "That is correct, Your Honor." *Id.* at 11. The district court concluded that Phillips' proposed testimony established a presumption that Shur–Value had received a copy of the POA and that Shur–Value could not rebut this presumption.

■ As its second argument on appeal, Shur–Value contends that because it had presented sufficient evidence to rebut the presumption that Phillips had ever mailed the POA, the issue of receipt of the letter properly belonged to the jury, and should not have been ruled upon as a matter of law by the district court. We disagree.

■ Under Texas law,[2] "a letter properly addressed, stamped and mailed to the addressee is presumed to have been received by the addressee in due course." *Cooper v. Hall,* 489 S.W.2d 409, 415 (Tex.Civ.App. 1972). "These matters may be proved by circumstantial evidence, such as the customary mailing routine in connection with the sender's business." *Id.; see also Hot Shot Messenger Service, Inc. v. State,* 798 S.W.2d 413, 415 (Tex.Ct.App.1990). As the record indicates, Phillips was prepared to present evidence demonstrating that Phillips would, as a matter of course, mail out POA forms

---

2. Neither party has appealed the district court's conclusion to apply Texas law in this diversity action. Although Shur–Value does not "concede" the point, it notes in its brief that "[t]he determination of whether Texas law or Arkansas law applies is not critical with respect to this issue ... because the law of both jurisdictions is the same." Appellant's Br. at 18 n. 8.

once it received a purchase order request. Accordingly, Phillips was entitled to the legal presumption that Shur–Value had received this particular POA form. Shur–Value does not seriously dispute this conclusion,[3] but rather contends that the district court erred in concluding that Shur–Value had failed to rebut the presumption of delivery and receipt.

To rebut the presumption of delivery and receipt and thus present a fact issue for the jury, the non-moving party must present testimonial evidence from an interested witness, denying that the letter was ever received. *Sudduth v. Commonwealth County Mut. Ins. Co.*, 454 S.W.2d 196, 197 (Tex.1970) (plaintiff filed affidavit stating that she did not receive notice of cancellation). The Texas courts have characterized as "substantial" the amount of evidence necessary to overcome the presumption, and based on a review of those decisions where the presumption was successfully overcome, we hold that the evidence presented here by Shur–Value is not "substantial" enough. *See Employers' Nat. Life Ins. Co. v. Willits*, 436 S.W.2d 918, 921 (Tex.Ct.App.1968); *Southland Life Ins. Co. v. Greenwade*, 159 S.W.2d 854, 858 (Tex. Comm'n App.1942) (internal quotation and emphasis omitted).

First, Shur–Value does not explicitly deny receiving the POA. Under the strict letter of Texas law, therefore, this fact alone would probably preclude Shur–Value from rebutting the presumption. Second, even assuming Shur–Value can rely on circumstantial evidence in support of its position, it has failed to present a sufficiently significant amount of circumstantial evidence to rebut the presumption of receipt. Shur–Value's admission that the POA was not in its files and that no one could remember receiving it does not, standing alone and viewed in the light most favorable to Shur–Value, create a

"justifiable inference" that Shur–Value has effectively denied receiving it. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986). To overcome the presumption of delivery and receipt, Shur–Value must offer "substantial probative evidence to the contrary." *Willits*, 436 S.W.2d at 921.

For example, in *Gulf Ins. Co. v. Cherry*, 704 S.W.2d 459 (Tex.Ct.App.1986), the alleged recipient, Gulf Insurance Co., presented the testimony of the manager of the accounting services department to rebut the insured's assertion that the insurance company presumptively received her premium check. This witness testified "in great detail as to the system for processing mail at Gulf, and concluded that [the insured's] check could not have been received [on time]." *Id.* at 461. The court concluded that "[c]onsidering its large volume of mail and automated system," Gulf sufficiently rebutted the insured's presumption of delivery. *Id.*

In this case, however, Shur–Value has only demonstrated that the POA was not in its file and that no one could remember ever receiving it. Had Shur–Value presented specific facts suggesting, for example, that its receiving or filing departments customarily open all letters and file all forms and thus would have noticed Phillips' POA had it been sent, then Shur–Value would have presented sufficient facts to overcome Phillips' presumption of receipt. We must conclude that because Shur–Value did not and has not set forth this type of argument and this type of evidence, it simply cannot rebut the presumption. *Cf. Beck v. Somerset Technologies, Inc.*, 882 F.2d 993, 996–97 (5th Cir.1989) (alleged recipient failed to rebut presumption of delivery because the only evidence of non-delivery presented was an employee's testimony that he could not remember receiving the letter

---

3. Shur–Value contends that because Phillips presented no affidavits in support of its position that this particular POA was actually prepared and mailed, Phillips was not entitled to the presumption that Shur–Value ever received the POA. We disagree. First, Texas law clearly provides that evidence of customary delivery procedures is sufficient to establish that a particular letter was sent out. *Cooper*, 489 S.W.2d at 415. Second, Fed.R.Civ.P. 56(c) provides that one may move

for summary judgment with or without supporting affidavits. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). Moreover, although Phillips' evidence consisted solely of its attorney's judicial admissions, this too is sufficient to activate the presumption. *Cf. United States v. Cravero*, 530 F.2d 666, 671–72 (5th Cir.1976) (defense attorney's concession of client's perjury constituted sufficient evidence to support the jury's verdict).

and could not recall that the person who signed for the letter worked for the company); *Roto–Lith, Ltd. v. F.P. Bartlett & Co.*, 297 F.2d 497, 498 (1st Cir.1962) (holding that there was an unrebutted presumption of receipt because the alleged recipient's principal witness could only testify that he did not know whether the acknowledgment was received, or what happened to it).

■ Shur–Value tries to excuse this failure of production on the amount of time afforded it during the telephone conference, contending that if it had had more time it could have provided additional evidentiary support by which to effectively, although not conclusively, rebut the presumption of delivery. This may be true. Certainly, the district court's procedures placed a heavier, more time-intensive burden on the plaintiff than conventional summary judgment motions do. And even though the telephone conference took place on the eve of trial— thereby affording Shur–Value enough time to review Phillips' time-bar defense [4]—trial preparation is, in many respects, significantly different than defending against a summary judgment motion. *Cf. Stella v. Town of Tewksbury, Mass.*, 4 F.3d 53, 56 (1st Cir. 1993). Despite these difficulties, however, Shur–Value has had an abundance of time to convince *this* court that it had the evidence necessary to rebut the presumption of delivery. Because it has not done so,[5] we must conclude that as a matter of law, Shur–Value received the POA form.

## C. Materiality of the Time–Bar Provision

■ The POA that Phillips sent to Shur–Value contained standard terms and conditions of sale, including a requirement that actions for breach of contract be brought within one year of the alleged breach. Because it is undisputed that the parties had never discussed any limitations period during the Chicago Trade Show or during Shur–Value's telephone order of K–Resin, Phillips' inclusion of a time-bar provision constituted an "additional term" as between merchants [6] and was thus governed by Tex.Bus. & Com. Code Ann. § 2.207 (West 1994). Section 2:207 provides that:

(a) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.

(b) The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:

(1) the offer expressly limits acceptance to the terms of the offer;

(2) they materially alter it; or

(3) notification of objection to them has already been given or is given within a reasonable time after notice of them is received.

*Id.* Because Shur–Value's November 15th offer did not expressly limit acceptance to the terms of the offer and because Shur–Value never objected to the inclusion of the time-bar provision, the only provision that concerns us here is (b)(2), the "material alteration" provision. If, as the district court

---

4. In its answer to Shur–Value's complaint, Phillips (among other things) affirmatively asserted that Shur–Value's complaint was barred by the terms of the contract between the parties because it was not filed within one year of the alleged breach. In its April 25, 1991 trial brief, Phillips discussed more fully the reasons why it believed Shur–Value's complaint was time-barred, citing several cases later relied upon by the district court. Shur–Value, in its reply to Phillips' trial brief, attempted to rebut Phillips' time-bar defense.

5. Shur–Value has additionally suggested that because it may be able to discredit the testimony of

Phillips' witness on cross examination, it still might be able to rebut the presumption of delivery. In attacking the movant party's witness' credibility, however, the nonmovant must show concrete evidence. As the Supreme Court noted in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256–57, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986), "discredited testimony is not normally considered a sufficient basis for drawing a contrary conclusion." *Id.* (internal quotation omitted).

6. It is undisputed that both the parties are "merchants" within the meaning of Section 2.207.

held, the additional one-year limitations period did not materially alter the contract as a matter of law, Shur–Value's claims would be time-barred. On the other hand, if, as Shur–Value contends, disputed factual questions determine whether a one-year limitations period materially alters a contract, we would have to vacate the district court's summary judgment order and remand for trial.[7]

The commentary to Section 2.207 provides some useful clues as to what would or would not "materially alter" a contract. According to Official Comment 4, clauses which would normally "materially alter" a contract, and thus result in surprise or hardship, include clauses "requiring that complaints be made in a time materially shorter than customary or reasonable." Conversely, Official Comment 5 provides examples of clauses which involve no element of unreasonable surprise and hardship, including a "clause fixing a reasonable time for complaints within customary limits." Taken together, Official Comments 4 and 5 suggest that a line divides time-bar provisions into two spheres. In one sphere reside limitation periods that are acceptable and accepted; in the other, limitation periods that are unacceptable and unaccepted. The question at issue here, however, is who should draw the line.

In Texas, the state legislature draws the line. Texas law provides that actions for breaches of sales contracts be filed within four years of the cause of action accruing, but it also provides that parties may, by original agreement, shorten the period of limitations to not less than one year. Tex. Bus. & Com.Code Ann. § 2.725(a) (West 1994). Because states, like Texas, usually stipulate which statute of limitations period applies to a given cause of action, statutes of limitations are distinctly legal creations, the parameters of which have been predetermined based on a myriad of policy and equity considerations. If a contractual provision stipulates a limitations period that falls within statutorily defined parameters (or, as we

have labeled them, spheres), then presumably the provision is not only legal, but also reasonable and customary, acceptable and accepted. Thus, because Phillips' POA provides for a one-year limitations period and Texas allows the shortening of a period of limitations to not less than one year, Phillips' POA seemingly constitutes a "clause fixing a reasonable time for complaints within customary limits." § 2.207 cmt. 5. *Cf. Aceros Industriales, S.A. de C.V. v. Florida Steel Corp.*, 528 F.Supp. 1156, 1158 (S.D.N.Y.1982) (interpreting New York's identical UCC provisions and concluding that fixing a one-year limitation on bringing complaints does not, as a matter of law, constitute a material alteration of prior oral agreement, in light of § 2:725); *Therma–Coustics Mfg. Inc. v. Borden Inc.*, 167 Cal.App.3d 282, 213 Cal.Rptr. 611, 619–20 (1985) (same, but interpreting California's UCC provisions).

The cases that have analyzed whether a time-bar addition to a contract constitutes a material alteration treats the issue as a question of law. Notwithstanding this wealth of precedent, Shur–Value contends that the issue of whether the time period of one year is reasonable represents an issue of fact and not law. In support of its position, Shur–Value resorts to arguing by analogy, assessing the way courts have treated contractual additions that limit a contracting party's *remedies.*

According to Official Comment 5 of § 2.207, a clause "limiting remedy in a reasonable manner" involves no element of unreasonable surprise and thus should be incorporated into the contract. Similar language applies to time-bar restrictions. However, unlike the courts' handling of time-bar restrictions, courts have consistently held that it is a question of *fact* whether a remedies limitation constitutes a material alteration.[8] Shur–Value thus concludes that determining whether a one-year limitations period constitutes a material alteration must also be a question of fact. We disagree.

---

7. We review the district court's summary judgment order de novo. *Dan's Super Market, Inc. v. Wal–Mart Stores, Inc.*, 38 F.3d 1003, 1004 (8th Cir.1994).

8. *See, e.g., Transamerica Oil Corp. v. Lynes, Inc.*, 723 F.2d 758, 765 (10th Cir.1983); *Wheaton Glass Co. v. Pharmex, Inc.*, 548 F.Supp. 1242, 1245 (D.N.J.1982); *Leonard Pevar Co. v. Evans Products Co.*, 524 F.Supp. 546, 550–51 (D.Del. 1981).

While the Texas Code explicitly condones the inclusion of a limitation of remedies clause, *see* Tex.Bus. & Com.Code Ann. § 2.719, the code leaves open the issue of what constitutes a *reasonable* limitation.[9] Therefore, determining the reasonableness of limitations on remedies requires a distinctly case and fact specific inquiry. The reasonableness of time-bar provisions, on the other hand, transcends the facts of any one particular case. Texas' UCC provision, § 2.725, expressly permits a one-year limitations period in contracts for the sale of goods. As to *any* sales contract between merchants governed by Texas law, a one-year time-bar restriction is per se statutorily acceptable. Thus, unlike the analysis required in evaluating remedies limitations, we need not analyze the particular factual circumstances surrounding the POA addition at issue here.

Even accepting the "reasonableness" of the one-year limitations period, Shur–Value still maintains that a factual inquiry is required. Specifically, Shur–Value contends that in determining whether an additional term to a contract constitutes a material alteration, the court still must make the factually intensive determination of whether the term will result in surprise or hardship to the affected parties. *See American Ins. Co. v. El Paso Pipe & Supply Co.*, 978 F.2d 1185, 1190 (10th Cir.1992). Shur–Value argues that the district court has not, and could not have, performed this analysis because this type of analysis requires the consideration of disputed factual issues, more appropriately left to the jury and not to the trial judge on a summary judgment motion.

We do not dispute Shur–Value's characterization of the "material alteration" test. Considerations of surprise and hardship must remain a part of the analysis. In this case, however, these considerations have already been taken into account by the Texas legislature, by the district court and by this court. Again, Texas' UCC provision,

§ 2.725, expressly allows for a one-year time-bar in contract actions. Because the avowed purpose of § 2.725 is to "introduce a uniform statute of limitations for sales contracts," we must assume that the Texas legislature's allowance of a one-year limitations period comports with this purpose and thus mirrors the reasonable customs of the state. Therefore, as Official Comments 4 and 5 to § 2.207 make perfectly clear, a limitations clause deemed reasonable and customary (as this one must be) involves, by definition, "no element of unreasonable surprise" or hardship. In sum, because our calculus has implicitly determined that the time-bar limitations addition results in no surprise or hardship to the parties, we need not engage in the type of separate analysis urged by plaintiff.

We do not stand alone in our interpretation of Texas law. Other courts of appeals have treated a "material alteration" issue as a question of law. In *Permian Petroleum Co. v. Petroleos Mexicanos*, 934 F.2d 635 (5th Cir.1991), for instance, the Fifth Circuit decided that, as a matter of Texas law, a term providing for interest on overdue invoices did not materially alter the contract. *Id.* at 654. Of course, not all "material alteration" issues are necessarily legal in nature. In some instances "the question whether an additional term in a written confirmation constitutes a 'material alteration' is a question of fact to be resolved by the circumstances of each particular case." *N & D Fashions, Inc. v. DHJ Industries, Inc.*, 548 F.2d 722, 726 (8th Cir. 1976). In this case, however, the per se reasonableness of the POA's one-year time-bar entitles Phillips to judgment as a matter of law. *Cf. Dale R. Horning Co., Inc. v. Falconer Glass Industries, Inc.*, 710 F.Supp. 693, 698 n. 6 (S.D.Ind.1989) (noting that "even though many cases state that the question of material alteration is a question of fact, there are instances in which the question is treated as one of law").

9. Section 2.719 provides that remedy limitations are allowable, but not when "circumstances cause ... a limited remedy to fail of its essential purpose," § 2.719(b), or, in the case of consequential damages, when the limitation is "unconscionable," § 2.719(c). Thus, fact specific considerations necessarily remain when determining whether the addition of a limitation of remedy clause materially alters the contract. *But see Kathenes v. Quick Check Food Stores*, 596 F.Supp. 713, 716–18 (D.N.J.1984) (court granted petitioner's motion for summary judgment, deciding, as a matter of law, that the remedy limitation was neither unreasonable nor unconscionable, and thus did not constitute a material alteration).

## IV. CONCLUSION

Accordingly, we affirm.