# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-1076
_____

UnitedHealth Group Incorporated, a Minnesota corporation,

*Plaintiff - Appellant,*

v.

Executive Risk Specialty Insurance Company; First Specialty Insurance Corporation; Starr Excess Liability Insurance International Limited; National Union Fire Insurance Company of Pittsburgh, PA,

*Defendants - Appellees.*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: October 19, 2016
Filed: September 7, 2017

_____

Before LOKEN, SMITH,[1] and COLLOTON, Circuit Judges.

_____

[1]The Honorable Lavenski R. Smith became Chief Judge of the United States Court of Appeals for the Eighth Circuit on March 11, 2017.

COLLOTON, Circuit Judge.

UnitedHealth Group sued several insurers in the District of Minnesota, seeking indemnity and defense costs for underlying litigation settlements under its professional liability excess insurance policies. UnitedHealth appeals the district court's[2] grant of summary judgment in favor of four insurance companies. UnitedHealth contends that the court erred in three ways: (1) by granting National Union Fire Insurance Company's summary judgment motion based on UnitedHealth's failure to provide adequate notice of its claim; (2) by determining that UnitedHealth presented insufficient evidence on how a settlement was allocated between covered and non-covered claims; and (3) by granting summary judgment *sua sponte* on UnitedHealth's claim for certain defense costs. We conclude that the district court did not err on the allocation issue, and that UnitedHealth waived its objection to the asserted *sua sponte* order on defense costs. Because the district court's rulings on those issues mean that National Union's coverage would not be implicated, it is unnecessary to address the court's separate order on the adequacy of notice to National Union. We therefore affirm.

I.

This appeal involves a dispute over insurance coverage for settlement amounts arising from two different lawsuits. UnitedHealth reached a single lump-sum settlement for the two actions together. There was potential insurance coverage for claims in one lawsuit but not for claims brought in the other. A dispute then arose over how to allocate the settlement amount between the covered and non-covered claims.

---

[2]The Honorable Patrick J. Schiltz, United States District Judge for the District of Minnesota.

The first lawsuit was filed in New York in 2000. A group of plaintiffs, including several group health plans insured or administered by UnitedHealth or its subsidiaries, sued UnitedHealth in New York state court, and United Health removed the action to federal court. One plaintiff was the American Medical Association, and we refer to this litigation as the *AMA* suit. The case involved databases used by UnitedHealth. UnitedHealth's subsidiary, Ingenix, owned two databases that UnitedHealth and other insurers used to calculate the usual, customary, and reasonable charges for medical services. UnitedHealth used the databases' calculations to determine the amount that it was required to pay for out-of-network services. The *AMA* plaintiffs alleged that UnitedHealth conspired with other insurers to provide inaccurate information to the Ingenix databases to reduce payment for out-of-network benefit claims. The plaintiffs brought claims under the Employee Retirement Income Security Act, Racketeer Influenced and Corrupt Organizations Act, Sherman Act, and state law. The district court, Judge Lawrence M. McKenna, dismissed most of the ERISA and RICO claims. The antitrust claims under the Sherman Act proceeded until the case eventually was settled.

The second action was filed in 2008 in New Jersey. In February 2008, a group of plaintiffs sued Oxford Health, an entity that UnitedHealth acquired in 2004, in the United States District Court for the District of New Jersey. One of the plaintiffs was named Malchow, and we refer to this action as the *Malchow* suit. The *Malchow* plaintiffs asserted claims under ERISA and violations of a state regulation, arising from breaches of contract and claims regarding Oxford's billings and payments.

That same month, the New York Attorney General served UnitedHealth with a Notice of Proposed Litigation based on allegations similar to those in the *AMA* suit. We refer to this action as the *NYAG* suit. On January 13, 2009, UnitedHealth settled the *NYAG* suit by entering into an agreement known as an Assurance of Discontinuance, under which UnitedHealth agreed to discontinue operating and using the Ingenix database once an independent database was created. *See* N.Y. Exec. Law

§ 63(15). As part of this settlement, UnitedHealth was required to pay $50 million to help establish this independent database.

The following day, UnitedHealth signed a settlement agreement to resolve both *AMA* and *Malchow* suits for $350 million. The settlement agreement did not state how the $350 million was to be allocated between the *AMA* plaintiffs and *Malchow* plaintiffs.

The *AMA* and *Malchow* plaintiffs moved to be certified as a settlement class before Judge McKenna in New York. The court reviewed the settlement agreement and held a seven-day evidentiary hearing to determine whether the settlement was fair and reasonable. In October 2010, Judge McKenna certified the settlement class, approved the $350 million settlement, and dismissed the *AMA* suit. Following the court's approval, and in accordance with the settlement agreement, the *Malchow* plaintiffs stipulated to the dismissal of the *Malchow* suit in New Jersey.

After signing the settlement agreement, UnitedHealth filed an amended complaint in this ongoing lawsuit in the District of Minnesota against its professional liability excess insurers. UnitedHealth sought damages for the insurers' failure to indemnify it for: (1) the *AMA* portion of the $350 million settlement under the Antitrust Endorsement of its professional liability insurance policy and $35 million in *AMA* defense costs; (2) the *NYAG* settlement; and (3) certain denied claims arising out of lawsuits alleging that UnitedHealth failed to reimburse certain medical expenses. In counts III and IV of its second amended complaint, UnitedHealth sought a declaratory judgment and damages for certain denied claims that are not at issue in this appeal. In counts V and VI, UnitedHealth sought a declaratory judgment and damages for an alleged breach of contract to reimburse UnitedHealth for the costs to defend and settle the *AMA* suit. In counts VII and VIII, UnitedHealth sought the same relief for alleged breaches related to the *NYAG* suit.

After several years of litigation, four excess insurers remain in this action: Executive Risk Specialty Insurance Company, First Specialty Insurance Corporation, Starr Excess Liability Insurance International Limited, and National Union Fire Insurance Company (collectively, the "Insurers"). Executive Risk holds the first excess insurance policy relevant to this appeal; coverage attaches at $95 million in damages. The others provide coverage at higher levels of damages.

In January 2013, the Insurers moved for partial summary judgment. National Union argued that UnitedHealth had failed to provide proper notice of the *AMA* claim during the policy period and thus was not entitled to any recovery from National Union for that claim. The district court agreed and dismissed UnitedHealth's claims against National Union based on the *AMA* suit. The court also ruled that UnitedHealth had the burden to allocate the settlement between the potentially covered *AMA* claims and the non-covered *Malchow* claims.

In October 2013, the district court ordered the parties to brief three issues relating to the allocation of UnitedHealth's $350 million settlement between covered and non-covered claims. The court stated that it would, if necessary, issue a scheduling order to address any remaining issues, including the allocation of UnitedHealth's defense costs in the *AMA* suit. After briefing and a hearing on the issues, the district court granted summary judgment for the Insurers on counts V and VI. The court ruled that UnitedHealth failed to meet its burden to present sufficient evidence to support an allocation between the potentially covered *AMA* claims and the non-covered *Malchow* claims. The court also ruled that the Insurers were entitled to summary judgment on UnitedHealth's claim for defense costs in the *AMA* suit.

Following the district court's grant of summary judgment on those claims, UnitedHealth and the Insurers entered into a stipulation for entry of final judgment because the remaining claims (counts III, IV, VII, and VIII) did not involve an amount of damages that was sufficient to trigger coverage under the excess policies.

The district court granted judgment in favor of the Insurers pursuant to the parties' stipulation. UnitedHealth now appeals, arguing that the district court erred in determining that UnitedHealth failed to provide adequate notice of the *AMA* claim to National Union, incorrectly placed the burden of allocation on UnitedHealth and then erred in concluding that UnitedHealth failed to present sufficient evidence to meet that burden, and erroneously adjudicated its *AMA* defense cost claims *sua sponte*.

Summary judgment is appropriate if there is no genuine issue of material fact for trial. Fed. R. Civ. P. 56(a). Where the nonmoving party will bear the burden of proof at trial on an essential element, the nonmoving party must put forward sufficient facts showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986); *Barge v. Anheuser-Busch, Inc.*, 87 F.3d 256, 258 (8th Cir. 1996). We review *de novo* the district court's grant of summary judgment, viewing the evidence and drawing all reasonable inferences in UnitedHealth's favor. *Larson v. Nationwide Agribusiness Ins. Co.*, 739 F.3d 1143, 1146 (8th Cir. 2014).

II.

We address first the district court's ruling on allocation of the settlement. First, UnitedHealth argues that it had no duty to allocate between the covered and non-covered claims under the plain language of its insurance policies. Second, it argues that under Minnesota law, it had no burden to allocate between the covered and non-covered claims and it was required to show only that it suffered a loss that would trigger coverage. Third, UnitedHealth maintains that even if it did bear the burden to allocate, then it presented sufficient evidence to survive summary judgment.

## A.

UnitedHealth argues that it had no duty under its insurance policies to allocate the $350 million settlement. The company contends that under the Antitrust Endorsement of the policy issued by the primary insurance carrier Lexington, which it asserts is incorporated into the excess insurance policies, UnitedHealth is entitled to coverage for the entire $350 million settlement so long as the settlement included covered antitrust claims. The district court determined that this argument was untimely and meritless. We agree. In its amended complaint, UnitedHealth sought indemnity for only the "portion" of the $350 million settlement attributable to the *AMA* suit. Its claim that it can recover the *entire* $350 million, including the amount attributable to the *Malchow* suit, was not timely advanced.

The claim also lacks merit. The *AMA* suit qualifies for coverage under the Antitrust Endorsement. The Endorsement provides that notwithstanding any other provisions of the policy, the Insurers must pay for UnitedHealth's "claims that directly or indirectly result from or are related to, a Wrongful Act consisting or allegedly consisting in whole or in part of anti-trust, price fixing or restraint of trade activities." But the *Malchow* claim was separate from the *AMA* claim, so the Endorsement generates coverage only for the *AMA* claim. In any event, as the district court observed, the excess insurance policies provide coverage described in the Endorsement only insofar as the coverage would not conflict with a provision of the excess policies. And it is undisputed that the excess policies did not cover the *Malchow* claims, because the defendant in *Malchow*, a predecessor-in-interest of UnitedHealth, was never an insured under those policies. UnitedHealth is therefore not entitled to the portion of the settlement that is allocated to the *Malchow* lawsuit.

B.

UnitedHealth also argues that under Minnesota law, it was not required to submit proof about allocation of the settlement between covered and non-covered claims. The company contends that it was sufficient to show simply that the settlement resulted in a covered loss of unspecified amount above $95 million, where coverage under the first excess policy is triggered.

Under Minnesota law, the initial burden is on the insured to prove *prima facie* coverage of a third-party claim under a liability insurance policy. *Remodeling Dimensions, Inc. v. Integrity Mut. Ins. Co.*, 819 N.W.2d 602, 617 (Minn. 2012). "If the insured meets its burden of establishing coverage of the claim, the burden shifts to the insurer to prove the applicability of an exclusion under the policy as an affirmative defense." *Id.* Although this general burden-shifting scheme is clearly established, the Minnesota Supreme Court has not squarely addressed who bears the burden to allocate between covered and non-covered insurance claims. "Where the state law is uncertain, our task is to predict how the state supreme court would resolve the issue if faced with it." *Marvin Lumber & Cedar Co. v. PPG Indus., Inc.*, 223 F.3d 873, 876 (8th Cir. 2000).

Our best guidance comes from the Minnesota Supreme Court's decisions in *Remodeling Dimensions* and *Bor-Son Building Corp. v. Employers Commercial Union Insurance Co. of America*, 323 N.W.2d 58 (Minn. 1982). These cases support the conclusion that the Minnesota court would place the burden on the insured to allocate between covered and non-covered claims.

In *Bor-Son*, a local housing authority brought several claims against Bor-Son and others for faulty workmanship on two building projects. 323 N.W.2d at 60. Bor-Son, the plaintiff-insured, eventually settled the lawsuit, but the settlement did not allocate the amount paid among the various claims. Bor-Son then sought a

declaratory judgment that its insurers were liable to indemnify it for the settlement. Under Bor-Son's insurance policy, the insurers were liable for claims based on loss of rent, but not for claims based on damage to buildings as the result of a breach of contract. The Minnesota Supreme Court held that because "there was no allocation of damage monies . . . that would establish the amount Bor-Son paid toward the settlement of that loss of rental claim, and since Bor-Son, in this case, furnished no evidence to establish that fact, Bor-Son failed to meet its burden of proving its claim for reimbursement." *Id.* at 64.

More recently, in *Remodeling Dimensions*, the Minnesota court concluded that an insurer who assumes the duty to defend an insured has a duty to disclose to its insured the availability of obtaining a written explanation of an arbitration award. 819 N.W.2d at 617-19. The court stated that "'the insured's ordinary burden to allocate a verdict between covered and non-covered claims' does not shift to the insurer unless the insurer had an affirmative duty to defend the underlying claims." *Id.* at 617-18 (quoting *Camden-Clark Mem'l Hosp. Ass'n v. St. Paul Fire & Marine Ins. Co.*, 682 S.E.2d 566, 576 (W. Va. 2009)). The court later concluded that "[t]he burden to prove allocation of an arbitration award *remains with the insured* unless" the insurer took on the duty to defend the insured and failed to disclose the availability of a written explanation of the award. *Id.* at 619 (emphasis added). Only when the insurer fails to disclose, and this failure results in prejudice to the insured, is the insurer "estopped from claiming that the insured has the burden of proving allocation of the award." *Id.* at 618.

In light of *Bor-Son* and *Remodeling Dimensions*, we conclude it is not enough under Minnesota law for UnitedHealth to show simply that its $350 million settlement included a covered claim of an unspecified amount. UnitedHealth bears the burden to allocate the settlement between the potentially covered *AMA* suit and the non-covered *Malchow* suit with enough specificity to permit a reasoned judgment about liability.

C.

To prove allocation, parties can present testimony from attorneys involved in the underlying lawsuits, evidence from those lawsuits, expert testimony evaluating the lawsuits, a review of the underlying transcripts, or other admissible evidence. *See, e.g.*, *Nodaway Valley Bank v. Cont'l Cas. Co.*, 916 F.2d 1362, 1365-66 (8th Cir. 1990); *Remodeling Dimensions, Inc.*, 819 N.W.2d at 618 n.4; *Zurich Reinsurance (UK) Ltd. v. Canadian Pac. Ltd.*, 613 N.W.2d 760, 764-65 (Minn. Ct. App. 2000). To survive summary judgment, an insured need not prove allocation with precision, but it must present a non-speculative basis to allocate a settlement between covered and non-covered claims. The district court concluded that UnitedHealth failed to provide non-speculative evidence to allocate the $350 million settlement between the potentially covered *AMA* suit and non-covered *Malchow* suit.

UnitedHealth complains that the district court excluded evidence that would have supported an allocation of the settlement. The company argues that the district court erroneously excluded both Judge McKenna's rulings and expert testimony in the underlying lawsuits that occurred after the settlement agreement was signed on January 14, 2009. The allocation inquiry examines how a reasonable party in UnitedHealth's position would have valued the covered and non-covered claims. In evaluating the claims, we look to what the parties knew at the time of settlement. *Cf. Zurich Reinsurance (UK) Ltd.*, 613 N.W.2d at 764-65 (examining settlement negotiations and internal memoranda to determine whether the settlement included non-covered damages); *St. Paul Fire & Marine Ins. Co. v. Nat'l Chiropractic Mut. Ins. Co.*, 496 N.W.2d 411, 415 (Minn. Ct. App. 1993) ("In determining what claims were settled, it is appropriate to consider the circumstances and events leading up to the settlement."). Events and circumstances happening after settlement are relevant only insofar as they inform how a reasonable party would have valued and allocated the claims at the time of settlement.

UnitedHealth argues that even if events after the settlement are irrelevant, the settlement date was really October 5, 2010—the date on which Judge McKenna approved the settlement. The settlement agreement for $350 million, however, was signed on January 14, 2009. The court approved that same agreement in October 2010. UnitedHealth points to no evidence suggesting that allocation of the $350 million settlement between the two lawsuits changed after the agreement was signed in January 2009. The signing date is therefore the relevant date.

The process that occurred after the settlement on January 14, 2009—including Judge McKenna's rulings and expert testimony and a report admitted at the settlement hearings—was inadmissible for purposes of allocating the $350 million settlement, because it did not address information that was available to the settling parties in January 2009. A reasonable settling party could not have relied on Judge McKenna's post-January rulings to inform its allocation of the $350 million settlement in January. The expert's testimony at the settlement hearings was based on an affidavit that he produced months after UnitedHealth executed the settlement agreement, so that evidence does not inform how a reasonable person would have allocated the settlement at the time it was reached.

In any event, the district court also properly excluded Judge McKenna's rulings as inadmissible hearsay. A court's prior judgment or ruling is inadmissible hearsay if it is offered to prove the truth of the matter asserted. *See* Fed. R. Evid. 801(c); *United States v. Boulware*, 384 F.3d 794, 806 (9th Cir. 2004); *cf. United States v. Jeanpierre*, 636 F.3d 416, 423 (8th Cir. 2011). Only judicial rulings that are offered for a different purpose, such as to show effect on the listener, are admissible. *Boulware*, 384 F.3d at 806; *see United States v. Wright*, 739 F.3d 1160, 1170 (8th Cir. 2014).

UnitedHealth seeks to offer Judge McKenna's rulings as evidence of what a reasonable person would consider when making an objective allocation

determination. The company purports to offer the rulings only to show the effect of the rulings on the listener, UnitedHealth. But Judge McKenna's rulings after January 14, 2009, could not have affected UnitedHealth's determination of the value of the *AMA* and *Malchow* lawsuits, because that valuation was made in January 2009 when the settlement agreement was signed. The district court similarly excluded the expert testimony from the October 2010 hearing as hearsay, and UnitedHealth does not challenge that ruling on appeal.

UnitedHealth also argues that the court abused its discretion when it ruled that UnitedHealth's expert, James Halverson, could not testify to the allocation of the $350 million settlement between the *AMA* suit and the *Malchow* suit. Federal Rule of Evidence 702 governs the admissibility of expert testimony. It provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

The district court has broad discretion to determine the admissibility of expert testimony under Rule 702. *Weisgram v. Marley Co.*, 169 F.3d 514, 518 (8th Cir. 1999).

Halverson is an expert on antitrust law, and the district court allowed him to testify about the value of the antitrust claims asserted in the *AMA* suit. But Halverson admitted that he is not an expert on ERISA, and he testified in his deposition that he did not analyze the *Malchow* lawsuit. Without analyzing the *Malchow* suit, Halverson could not provide an expert opinion about its value. And without knowing the value of the *Malchow* suit, Halverson could not testify as to the *relative value* of

the *AMA* suit compared to the *Malchow* suit. Thus, the district court did not abuse its discretion in determining that Halverson was not qualified to testify about the settlement value of the ERISA claims or how the $350 million settlement should be allocated between the *AMA* and *Malchow* claims.

At oral argument, UnitedHealth suggested that because the *Malchow* complaint alleged only $160,000 in damages, a jury reasonably could calculate the value of *Malchow* as no more than $160,000 and allocate the rest of the $350 million settlement to the *AMA* suit. But UnitedHealth did not present this argument to the district court, and it is forfeited. The amount of damages cited in the complaint, moreover, does not by itself support a finding on how a reasonable party in UnitedHealth's position would have valued the *Malchow* suit when it settled the cases. The *Malchow* suit was a putative class action; the damages enumerated were attributable only to the named individual plaintiffs. The exposure to the defendants in damages, costs of litigation, injury to reputation, and other categories could have been much greater. The Insurers point out that UnitedHealth suggested in a previous lawsuit, which is subject to judicial notice, that the *Malchow* suit might have triggered insurance coverage of $120 million. We cannot say based on the *Malchow* complaint alone that the settlement value of the case was *de minimis*.

Finally, UnitedHealth argues that even without the excluded evidence, and aside from the individual damages asserted in the *Malchow* complaint, it still presented sufficient evidence for a jury to allocate the settlement. UnitedHealth relies on pre-settlement rulings from the *AMA* and *Malchow* suits, which show that the *AMA* suit involved primarily antitrust claims, and that the *Malchow* suit's monetary claims centered on ERISA. UnitedHealth contends that this evidence, together with evidence about UnitedHealth's insurance policies and Halverson's testimony about the value of the *AMA* suit, provided a sufficient basis for a jury to decide allocation and award damages.

It is well settled that a jury may not base its damages award on speculation. *See Faust v. Parrott*, 270 N.W.2d 117, 120 (Minn. 1978). The evidence presented by UnitedHealth fails to give a jury more than a speculative basis on which to allocate the $350 million settlement between the *AMA* and *Malchow* suits. These were complex lawsuits involving different claims and legal theories. Allocation required either contemporaneous evidence of valuation or expert testimony on relative value to provide a reasonable foundation for a jury's decision. Without more evidence about the relative value of the claims, a reasonable jury could only speculate as to how the settlement should be allocated. UnitedHealth made strategic decisions to invoke attorney-client privilege and work-product protection to avoid presenting evidence from its own representatives about contemporaneous valuations of the settlement. The company declined to present additional expert testimony about the value of the *Malchow* suit to complement Halverson's testimony about the *AMA* suit, or to identify an expert who was qualified to address both. On the record that was presented, the district court properly concluded that UnitedHealth failed to present sufficient evidence to submit the issue to a jury. We therefore affirm the district court's grant of summary judgment for the Insurers on UnitedHealth's indemnity claim for a portion of the $350 million settlement attributable to the *AMA* suit.

### III.

UnitedHealth also contends that the district court erred when it granted summary judgment for the Insurers on UnitedHealth's claim for $35 million in defense costs in the *AMA* suit. The company complains that the court ruled without giving notice and an opportunity to address the issue. In an order directing the parties to brief three discrete issues "relating to allocation of the *AMA* settlement between covered and uncovered claims," the court had informed the parties that issues regarding allocation of defense costs would be addressed in a later briefing schedule if a trial was still required. UnitedHealth objects that the court then granted summary judgment on the defense costs without further notice.

-14-

Federal Rule of Civil Procedure 56(f)(2) provides that a district court may grant a motion on grounds not raised by a party if the parties had notice and a reasonable time to respond. But a court "commits reversible error when it grants summary judgment on an issue not raised or discussed by the parties." *Heisler v. Metro. Council*, 339 F.3d 622, 631 (8th Cir. 2003).

The Insurers respond that if the district court erred by acting *sua sponte*, then UnitedHealth waived any objection to the procedure when it failed to alert the district court while the case was still pending. After the disputed order, UnitedHealth entered into a stipulated judgment that dismissed the remaining claims, but never informed the court that it sought to be heard on its claim for defense costs.

In two decisions, this court has held that a party waived any objection to a district court's *sua sponte* order granting summary judgment by failing to raise the matter in the district court after the order was entered. *Figg v. Russell*, 433 F.3d 593, 597 (8th Cir. 2006); *Shur-Value Stamps, Inc. v. Phillips Petroleum Co.*, 50 F.3d 592, 595 (8th Cir. 1995). UnitedHealth says that these cases are distinguishable because the parties there had advance notice that the court might act *sua sponte*, whereas UnitedHealth was led by the court's briefing order to believe that there would be no action on defense costs until a later time. We did say in *Figg* that the losing party was on notice that the court might grant summary judgment without a new motion from the other side. But *Figg* emphasized that "*more importantly*, 'a party waives the notice requirement when it fails to object based on insufficient notice and fails to assert prejudice.'" 433 F.3d at 597 (emphasis added) (quoting *Shur-Value*, 50 F.3d at 595). Whether or not a party receives an advance signal that the court might act *sua sponte*, *Shur-Value* and *Figg* say that any objection to that procedure is waived if the party does not at least object *after* the court enters its order while the action is still pending. *Accord Spring St. Partners-IV, L.P. v. Lam*, 730 F.3d 427, 435-36 (5th Cir. 2013).

-15-

UnitedHealth points to *American Red Cross v. Community Blood Center of the Ozarks*, 257 F.3d 859 (8th Cir. 2001), where this court "[r]eluctantly" reversed a grant of summary judgment because the district court ruled *sua sponte*. *Id.* at 863. The court in *American Red Cross*, however, did not discuss whether the appellant objected in the district court or waived its objection to the procedure. *Shur-Value* was not cited. The appellee might have waived the waiver. The same can be said for *Heisler*, 339 F.3d at 631-32, and *Walker v. Missouri Department of Corrections*, 138 F.3d 740, 742 (8th Cir. 1998) (per curiam). Because the issue of waiver was not joined in these cases, we do not consider them precedent on that point. "Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents." *Webster v. Fall*, 266 U.S. 507, 511 (1925).

UnitedHealth had an opportunity to raise its objection to the district court's summary-judgment procedure before it stipulated to the entry of final judgment. Nothing in the district court's letters to counsel precluded the company from alerting the court to this alleged mistake. When UnitedHealth failed to raise the point, it waived the notice requirement under our precedents in *Shur-Value* and *Figg*. We therefore decline to disturb the district court's grant of summary judgment for the Insurers on the matter of defense costs in the *AMA* litigation.

IV.

The district court dismissed UnitedHealth's claims against National Union for failure to give adequate notice of the *AMA* claim under the policy. The district court's later rulings, however, make it unnecessary to address the notice issue, because there is not a sufficient amount of alleged damages remaining in the case to trigger coverage under the National Union policy even if notice had been adequate. We therefore affirm the dismissal of the claims against National Union on this alternative ground.

\*    \*    \*

For the foregoing reasons, the judgment of the district court is affirmed.

_____