**Edward Lee SMITH, Petitioner and Appellee,**

v.

**BOARD OF PARDONS AND PAROLES State of South Dakota, Appellant.**

**No. 18211.**

Supreme Court of South Dakota.

Considered on Briefs October 7, 1993.

Decided April 20, 1994.

Cynthia Howard, Minnehaha County Public Defender, Sioux Falls, for petitioner and appellee.

Mark Barnett, Atty. Gen., Frank E. Geaghan, Asst. Atty. Gen., Pierre, for appellant.

SABERS, Justice.

State appeals the circuit court's reversal of the Board of Pardons and Paroles' revocation of Edward Lee Smith's (Smith) suspended sentence.[1]

## FACTS

On January 23, 1991, Smith pled guilty to fourth offense driving while under the influence of alcohol (DUI). He was sentenced to serve four years in the state penitentiary. Execution of the latter two years of Smith's sentence was suspended on the following conditions:

A. That [Smith] successfully complete inpatient treatment and Aftercare; and,

B. [That Smith's] driving privileges [be] revoked for two years following discharge.

Smith was granted a parole on September 26, 1991 after serving approximately eight months in the penitentiary.[2] On the day of his release, Smith signed a parole agreement conditioning his parole on his nonconsumption of alcoholic beverages and his attendance at AA meetings five times per week. A new parole agent was later assigned to Smith's case and, as a result, Smith complet-

---

1. This case involves issues substantially similar to those considered in *Robinson v. Leapley*, 515 N.W.2d 216 (S.D.1994).

2. This parole, prior to commencement of Smith's suspended sentence, created a split parole/suspended sentence situation. That is to say, that while on parole, Smith was released from the penitentiary solely according to the terms and conditions established by the Board of Pardons and Paroles in granting his parole. Later, when Smith's two year suspended sentence com-

menced, he would have been released from the penitentiary under the terms and conditions placed on the suspended sentence by the sentencing court as well as under any additional terms and conditions imposed on the suspension by the Board of Pardons and Paroles. *See, e.g., Turo v. Solem*, 427 N.W.2d 843 (S.D.1988) (Board may place conditions on suspended sentence in addition to those placed on suspension by sentencing court so long as additional conditions are reasonable and not inconsistent with those imposed by sentencing court).

ed a second parole agreement on December 3, 1991. Like the first agreement, the second agreement conditioned Smith's parole on his nonconsumption of alcoholic beverages and his attendance at AA meetings.

On or about January 17, 1992, Smith's parole agent filed a violation report alleging that, on at least two occasions, Smith had violated the provision of his parole agreement forbidding his consumption of alcoholic beverages. The parole agent recommended that Smith's parole status be revoked with a loss of good time.

A parole revocation hearing was conducted before the Board of Pardons and Paroles on February 26, 1992. During the hearing, Smith admitted the allegations of the parole violation report concerning his consumption of alcoholic beverages. On February 28, 1992, the Board entered an, "ORDER REVOKING PAROLE *AND SUSPENDED SENTENCE*" (emphasis added) providing that:

> the parole heretofore granted by the Board of Pardons and Paroles to Edward L. Smith on the 27th day of September, 1991, is hereby revoked with the loss of NO good time; no dead time.
>
> It is further
>
> ORDERED that the original two (2) year suspended portion of the original sentence is hereby revoked and the original four (4) year sentence be imposed on # 27072.

Thus, not only did the Board's order revoke Smith's parole but also the two year suspended portion of his sentence.

Smith appealed the Board's order to the circuit court on March 27, 1992. The parties thereafter entered into a stipulation of facts, briefs were submitted and oral argument conducted on October 29, 1992. The circuit court entered its findings of fact and conclusions of law on November 10, 1992. The circuit court determined that the Board had no authority to revoke Smith's suspended sentence prior to commencement of the suspended portion of the sentence. We disagree. The circuit court further determined that, because nonconsumption of alcoholic

beverages was not made a condition of Smith's suspended sentence, his violation of that provision of his parole agreement was not a violation of the suspended sentence warranting its revocation. We agree. Therefore, we reverse in part and affirm in part.

## ISSUE 1

DID THE BOARD OF PARDONS AND PAROLES HAVE AUTHORITY TO REVOKE SMITH'S SUSPENDED SENTENCE?

■ State argues that the circuit court erred in determining that the Board had no authority to revoke Smith's suspended sentence before commencement of the suspended portion. We agree with State to this extent.

Prior to 1985, resolution of this issue would have been clear. In *State v. Holter*, 340 N.W.2d 691, 693 (S.D.1983), this Court recognized that, "a trial court may revoke a suspended sentence or probation *even before a defendant begins to serve the suspended portion.*" (emphasis added). *Holter* was subsequently reaffirmed by this Court in Application of *Adams on Behalf of Schmit*, 360 N.W.2d 513 (S.D.1985). In 1985, however, this Court reached the following holding in *State v. Huftile*, 367 N.W.2d 193, 197 (S.D. 1985):

> SDCL 1–15–1 establishes the Board of Charities and Corrections as an arm of the executive branch of government. Just as clearly, the trial court's function in suspending sentence and granting terms of probation are exclusively the province of the judicial branch. The constitutional power to suspend necessarily includes the power to revoke that suspension, *unless otherwise provided by law*, Article V, section 5. In this case, it is expressly provided by statute that the Board of Charities and Corrections has been granted the power to revoke when the inmate has been paroled by virtue of a suspended sentence. SDCL ch. 24–15; SDCL 23A–27–19.[3] We

---

3. SDCL 23A–27–19 was amended during the 1988 legislative session to transfer this power of

revocation from the Board of Charities and Cor-

conclude, therefore, that once the court has committed a defendant to the executive branch of government, namely the penitentiary, that inmate then can be released only by and, under the supervision of the Board of Charities and Corrections, even though the release results from an order of suspension. (emphasis original) (footnote added).

*Huftile* was promptly reaffirmed by this Court in *State v. Oban*, 372 N.W.2d 125, 129 (S.D.1985):

The circuit courts of this state do not have the power, authority, or jurisdiction to parole prisoners, to supervise parolees or those on parole under a suspended sentence, or to revoke parole. Thus, once an offender is within the jurisdiction of the executive branch of government, the judicial branch—the circuit court—loses jurisdiction and control. *State v. Huftile*, 367 N.W.2d 193.

■ The above authorities make clear that, before 1985, a circuit court retained the authority to revoke the suspended portion of a sentence even before the suspended portion began to run. *Huftile* and *Oban* caused a necessary change in this principle by holding that the circuit courts have no jurisdiction to revoke a suspended sentence. That authority is now vested solely in the Board of Pardons and Paroles by virtue of SDCL 23A–27–19:

Any person whose sentence is suspended pursuant to this section is under the supervision of the board of pardons and paroles, except as provided in § 23A–27–18.2. The board is charged with the responsibility for enforcing the conditions imposed by the sentencing judge and the board retains jurisdiction to revoke the suspended portion of the sentence for violation of the terms of the suspension.

Thus, under current law, if a suspended sentence is to be revoked before the suspended portion begins to run, the revocation must be conducted by the Board of Pardons and Paroles. The circuit courts no longer have jurisdiction in this respect. Although Smith

makes much of the fact that there is no explicit authorization for the Board of Pardons and Paroles to conduct revocation proceedings before a defendant begins serving his suspended sentence, we find that to be of little significance. The statute that permitted the revocation of the suspended sentence in *Holter* merely provided that, " '[a] court may revoke such suspension at any time during the probationary period and impose and execute sentence without diminishment[.]' " *Holter*, 340 N.W.2d at 694, n. 3 (quoting SDCL 23A–27–13). In response to the defendant's argument that the statute only permitted revocation while the defendant was actually serving the suspended part of the sentence, this Court held, "the statute *does not prohibit* a court from revoking a suspension before the suspended portion has begun; it merely allows the court to act during the suspension." *Holter*, 340 N.W.2d at 694 (emphasis added).

If anything, the statute authorizing the Board of Pardons and Paroles to revoke a suspended sentence is more broad based than the one under consideration in *Holter*. SDCL 23A–27–19 provides in pertinent part that, "the board retains jurisdiction to revoke the suspended portion of the sentence for violation of the terms of the suspension." Thus, like the statute permitting revocation in *Holter*, SDCL 23A–27–19 *does not prohibit* the Board of Pardons and Paroles from revoking a suspended sentence before the suspended portion has begun. There is simply no time limitation whatsoever in the provision. Similar to the appellant in *Application of Adams, supra*, Smith fails to point to any statutory provision that limits the Board of Pardons and Paroles' statutory power to revoke the suspended portion of a defendant's sentence before the suspended portion begins to run.

Based upon the above analysis, we hold that the circuit court did err in determining that the Board of Pardons and Paroles had no authority to revoke Smith's suspended sentence before he began serving the suspended sentence.[4]

---

rections to the Board of Pardons and Paroles. 1988 S.D.Sess.L. ch. 192.

4. We reject the position of the special concurrence regarding our reliance on *Holter, supra,* and *Application of Adams, supra.* These cases

## ISSUE 2

### DID SMITH VIOLATE THE CONDITIONS OF HIS SUSPENDED SENTENCE?

■ State also contends that the circuit court erred in determining that, because non-consumption of alcoholic beverages was not a condition of Smith's suspended sentence, his violation of that condition of his parole agreement would not support revocation of his suspended sentence. In response, Smith argues that the revocation of his suspended sentence for his consumption of alcohol violated his rights to due process of law. Smith asserts he was not given proper notice that his alcohol consumption could lead to the loss of his suspended sentence and that he had no notice prior to the revocation hearing that his alcohol violation had placed both his suspended sentence and his parole in jeopardy.

Smith relies substantially on *United States v. Dane*, 570 F.2d 840 (9th Cir.1977) as authority for his arguments and state acknowledges the applicability of the due process principles set forth in the decision:

> It is an essential component of due process that individuals be given fair warning of those acts which may lead to a loss of liberty. This is no less true whether the loss of liberty arises from a criminal conviction or the revocation of probation.
>
> As a general matter, formal conditions of probation serve the purpose of giving notice of proscribed activities. But a formal condition is not essential for purposes of notice. Courts have sustained the revocation of probation for criminal activity committed prior to the effective date of the conditions, or where the defendant was not aware of the conditions. In such a case, knowledge of the criminal law is imputed to the probationer, as is an understanding that violation of the law will lead to the revocation of probation. On the other hand, where the proscribed acts are not criminal, due process mandates that the petitioner cannot be subjected to a forfei-

ture of his liberty for those acts unless he is given prior fair warning. Of course, where the warning is not contained in a formal condition, the record must be closely scrutinized to determine whether the defendant did, in fact, receive the requisite warning.

*Dane*, 570 F.2d at 843–44 (citations and footnote omitted).

Here, there is no allegation that Smith's act, i.e., the consumption of alcohol, constituted criminal activity. Thus, unless Smith received prior fair warning that that act could lead to revocation of his suspended sentence, the Board of Pardons and Paroles' decision to revoke violated the requirements of due process. *See, Dane, supra.*

While the judgment suspending Smith's sentence contained no explicit prohibition on his consumption of alcohol, State contends that Smith did receive "prior fair warning" that such consumption could lead to the revocation of his suspended sentence. In that regard, State points to the condition of the suspended sentence requiring Smith to, "successfully complete in-patient treatment and aftercare." State argues that common sense dictates abstinence from alcohol is implicit in alcohol treatment and, therefore, Smith's contention of lack of fair warning is "specious."

In support of its argument, State cites *State v. Sullivan*, 197 Mont. 395, 642 P.2d 1008 (1982). In *Sullivan*, a defendant was sentenced to ten years imprisonment with the latter five years suspended. The defendant was paroled and, while on parole, had his suspended sentence revoked for violation of a condition mandating alcohol counseling. On appeal, the defendant contended that the condition of his supervision providing that, " 'on parole you must have regular alcohol counseling,' " applied only to his parole and not his probation. *Sullivan*, 642 P.2d at 1011. The Montana court did reject the argument as "specious." *Id.* However, Montana law recognizes that, "in the absence

---

continue to provide the most analogous authority for the specific issue in this appeal, i.e., the propriety of the revocation of a suspended sentence *prior to commencement of the suspended portion. Huftile, supra* and *Oban, supra*, while

unquestionably good law, only deal in general terms with the lack of authority for the circuit courts to revoke suspended sentences. Here, however, we are not reviewing a circuit court's revocation of a suspended sentence.

of conditions ordered by the sentencing court, the conditions of parole imposed by the Board of Pardons are the conditions of a suspended sentence." *Sullivan,* 642 P.2d at 1011. Moreover, the sentencing court had expressly made the defendant's probation subject to any supervisory conditions imposed by the Board of Pardons.

Unlike Montana, South Dakota law does not recognize that, "conditions of parole apply also to suspensions of sentence[.]" *Sullivan,* 642 P.2d at 1011. Therefore, unlike *Sullivan,* the operation of law in the instant case did not automatically translate the conditions of Smith's parole into the conditions of his suspended sentence. That is certainly within the power of the Board of Pardons and Paroles and could have been easily accomplished. In *Turo, supra,* this Court recognized that the Board of Pardons and Paroles may impose conditions on a defendant's suspended sentence in addition to those imposed by the sentencing court so long as the additional conditions are reasonable and not inconsistent with those mandated by the court. However, in *Turo,* the notice requirements concerning the conditions of the suspended sentence were clearly met by the fact that the defendant's parole agent specifically explained that the conditions of the suspended sentence would be the same as for parole and by the defendant's execution of a contract enumerating the conditions of both the parole *and* suspended sentence. There is no similar record in the instant case.

As State suggests, the condition of Smith's suspended sentence that he obtain alcohol treatment might have given Smith some warning that nonconsumption of alcohol was a condition of his suspended sentence. Nevertheless, the lack of explicit notice of the condition clearly led to confusion and misunderstanding by both the Board and Smith in the notice, hearing and decision leading to the revocation of Smith's suspended sentence. The parole agent's violation report recommended only that Smith's, "*parole* status be revoke[d]." (emphasis added). The notice of the revocation hearing advised that the hearing would be in regard to a violation of condition 13–A (i.e., nonconsumption of alcohol) of the *parole* agreement. At the beginning of the revocation hearing, Smith was advised that the maximum consequence of the hearing was the revocation of his *parole* and loss of good time. The advisement was then changed and Smith was instructed that he could lose his parole status *and* that his suspended sentence could be imposed. Smith immediately indicated his misunderstanding concerning the loss of his suspended sentence and told the Board that his parole agent had only discussed the loss of his parole. Nearly six pages of the hearing transcript are then devoted to an attempt by both the Board and Smith to ascertain the maximum consequences of the revocation proceeding. Ultimately, when Smith was asked if he understood the consequences of the hearing, he responded, "Yeah, I guess so."

Confusion continued into the Board's order which revoked both Smith's parole *and* his suspended sentence but found only that Smith had violated the terms of his "parole."

> One of the minimum due process requirements of parole or probation revocation proceedings is written notice of the claimed violations.

> The purpose of the requirement that written notice be given prior to such proceedings is to insure that the parolee or probationer is able to sufficiently prepare his case, both against the allegations of violations and against the contention that the violations, if proven, demonstrate that parole or probation is no longer an effective rehabilitative tool and should be revoked. In other words, the requirement bears directly upon the ability to contest revocation proceedings.

*State v. McCormick,* 385 N.W.2d 121, 123 (S.D.1986) (citations and footnote omitted).

In this instance, there was a lack of clarity concerning the conditions of Smith's suspended sentence that led to confusion in the parole violation report, inaccuracy in the notice of hearing and misunderstanding by both the Board and Smith during the revocation hearing. Simply stated, if the Board was not sure of the consequences of the revocation hearing, it is difficult to see how Smith could have been and how the notice of hearing was sufficient to enable Smith to contest the revo-

cation proceedings. The fact Smith was offered a continuance and wanted to proceed is also unpersuasive support for State's argument that he waived his rights to sufficient notice of his probation violation.

> [A] waiver must be made voluntarily, knowingly, and intelligently, with sufficient awareness of the relevant circumstances and likely consequences. The waiver of a constitutional right must be positively established, and the burden is on the party alleging waiver as courts closely scrutinize such allegations, indulging every reasonable presumption against waiver. When determining whether a constitutional right has been waived, this court looks to the totality of the circumstances.

*McCormick*, 385 N.W.2d at 123–24 (citations omitted).

In *McCormick, supra,* this court declined to construe the probationer's refusal of a continuance of the revocation proceedings as a waiver of his notice rights as there was nothing to show that he had ever been advised by the court or counsel that his refusal could be construed as a waiver. Here, Smith was not even represented by counsel and, again, there is nothing to show that he was advised that his rejection of a continuance could be construed as a waiver of his right to notice of the condition of his suspended sentence he allegedly violated.

Based upon the above reasoning, we find no error in the circuit court's reversal of the revocation of Smith's suspended sentence and affirm.

MILLER, C.J., and WUEST, J., concur.

HENDERSON, J., concurs in result.

AMUNDSON, J., disqualified.

HENDERSON, J. (concurring in result).
### ISSUE 1

Board of Pardons and Paroles did not exceed its *jurisdiction* (due to Article II of the South Dakota Constitution dividing state government into three distinct departments). This is premised upon our holdings in *State v. Huftile*, 367 N.W.2d 193, 197 (S.D.1985), and *State v. Oban*, 372 N.W.2d 125, 129 (S.D.1985), both of which are settled law in this state and have not been overruled; I further base my opinion upon the express provisions of SDCL 23A–27–19.

Having so expressed, I concur in result only because the majority writing bases its rationale upon *State v. Holter*, 340 N.W.2d 691, 693 (S.D.1983), cited five times for authority; *Holter* is not good law in this state as it was reversed by *Huftile* in 1985. Further, rather than to cite to *Oban* which reaffirmed *Huftile*, and *Oban* being solid law in this state, the majority opinion in its closing treatment on this issue cites to *Application of Adams on Behalf of Schmit*, 360 N.W.2d 513 (S.D.1985), also a reversed case. *See Huftile*, 367 N.W.2d at 197 (Wuest, J., concurring in result).

I confess: I am bewildered by the author's series of forward and backward movements, all a part of the thinking process, which ultimately begets the creative product, i.e., the decision. Harnessed I am to *Huftile* and *Oban,* believing they should have greater significance in the creative part of our base decision, rather than *Holter* and *Adams,* the latter cases having been, by subsequent decision, overruled; whereas, the force of reasoning and controlling precedent abide in *Huftile* and *Oban,* I do abide therein. *Accord: State v. Moon,* 514 N.W.2d 705 (1994).

### ISSUE 2

I concur. No advisement of rights. No attorney. Utter confusion in the scope of the proceeding. No proper notice. No reasonable opportunity to be heard in a meaningful manner. No due process. *See Boddie v. Connecticut,* 401 U.S. 371, 378, 91 S.Ct. 780, 786, 28 L.Ed.2d 113 (1971); *Bult v. Leapley,* 507 N.W.2d 325, 329 (S.D.1993) (Henderson, J., specially concurring); *Daugaard v. Baltic Co-op Bldg. Supply Ass'n,* 349 N.W.2d 419, 424 (S.D.1984).