# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-1249

_____

| | | |
|---|---|---|
| Nicole Figg, | * | |
| | * | |
| Appellant, | * | Appeal from the United States |
| | * | District Court for the District |
| v. | * | of South Dakota. |
| | * | |
| Duane Russell; Mary Lou Jorgensen; | * | |
| Robert Hofer; Brent Walker; | * | |
| Brenda Hyde; J. Does, 1-10, | * | |
| | * | |
| Appellees. | * | |

_____

Submitted: September 12, 2005
Filed: January 5, 2006

_____

Before MELLOY, BEAM, and BENTON, Circuit Judges.

_____

BEAM, Circuit Judge.

Nicole Figg appeals the district court's grant of summary judgment dismissing a 42 U.S.C. § 1983 claim and several state-law causes of action arising from her incarceration in the South Dakota Women's Prison. The district court held that since Figg's sentence of incarceration had not been invalidated, her section 1983 action was barred by the "favorable-termination" rule established in Heck v. Humphrey, 512 U.S. 477 (1994), and that her state-law causes of action were likewise interdicted. We affirm the dismissal of the 1983 action on alternative grounds, and reverse the grant of summary judgment on the state-law claims.

## I.    BACKGROUND

In April 1997, Figg pled guilty to one count of forgery in Butte County, South Dakota. She received a suspended sentence from a South Dakota Circuit Court. In September 1998, Figg admitted she violated the terms of her suspended sentence. The circuit court revoked the suspended sentence, and sentenced Figg to five years' incarceration in the South Dakota State Penitentiary, with three of the five years suspended. On October 26, 1998, Figg signed a parole agreement (October Agreement) with the South Dakota Board of Pardons and Paroles (Parole Board), which did not indicate that the suspended portion of her sentence was subject to reinstatement should she violate parole. On November 9, 1998, Figg signed a second parole agreement (November Agreement) which did indicate the suspended portion could be reinstated if she violated parole.

In December 1998, Figg was released on parole. In March 1999, a parole services report alleged that Figg had violated her parole, referring to the October Agreement, but not to the November Agreement. In May 1999, Figg received notice of her parole hearing, which indicated that she was accused of a violation which could result in revocation of her parole, reinstatement of her suspended sentence, or both. At her parole hearing, Figg was not informed that she was facing reinstatement of the suspended portion of her sentence. The board member conducting the hearing issued recommended findings of fact and conclusions of law, in which he concluded that Figg had violated parole, and recommended that parole be revoked and the suspended part of her sentence be reinstated. In May 1999, the Parole Board revoked Figg's parole and reinstated the suspended portion of the sentence.

In August 2001, Figg filed a petition in state court for habeas corpus relief. At the habeas hearing, Figg testified she was not informed that a parole violation could result in reinstatement of the suspended portion of her sentence. The habeas court had before it the October Agreement, but not the November Agreement, when it granted

-2-

the writ in December 2001. Relying on <u>Smith v. Board of Pardons and Paroles</u>, 515 N.W.2d 219, 223 (S.D. 1994) ("'[D]ue process mandates that the petitioner cannot be subjected to a forfeiture of his liberty for . . . acts unless he is given prior fair warning'") (quoting <u>United States v. Dane</u>, 570 F.2d 840, 843-44 (9th Cir. 1977)), the habeas court found that Figg had no warning that violation of her parole could result in reinstatement of her suspended sentence. No appeal was taken from the habeas court's grant of the writ. Figg then brought a section 1983 action in the United States District Court for the District of South Dakota against Parole Board members Robert Hofer and Mary Lou Jorgensen; against South Dakota Women's Prison staffers Duane Russell and Brenda Hyde; and against Brent Walker, a parole agent and administrative assistant; for "illegally" incarcerating her for 416 days (the time she was held after the Parole Board reinstated the suspended portion of her sentence).

In December 2002, the defendants intervened in the already terminated state habeas proceeding and, on the basis of the November Agreement, moved the court to vacate the writ and/or order a new trial. In December 2003, they moved in the district court for summary judgment in the section 1983 action on the basis of absolute and qualified immunity. The district court denied the motion without prejudice and stayed the action until the state habeas court finished revisiting its grant of the writ, noting that the state court might decide issues related to the federal action and thus collaterally estop the district court from revisiting them.

The state habeas court made its decision in June 2004. Because Figg's parole supervision ended in August 2003, and South Dakota no longer had authority to reincarcerate Figg, the court declined to order a new habeas trial. But the court found that Figg's lack of candor to the court in the first habeas proceeding regarding her knowledge of the November Agreement constituted grounds–based in fraud, misrepresentation, or other misconduct–to vacate the writ. Vacatur of the writ was filed July 1, 2004.

The habeas tribunal sent its decision to the district court. The district court held that in order to seek section 1983 relief for her "illegal" incarceration, Figg must first prove that the underlying sentence was "reversed, expunged, invalidated, or impugned by the grant of a writ of habeas corpus." Heck, 512 U.S. at 489. Because Figg could not satisfy Heck's "favorable-termination" rule given that her writ of habeas corpus had been vacated, the court concluded her section 1983 action could not proceed. The district court also held that since the state habeas court had set aside that court's earlier due process determination, collateral estoppel barred relitigating that decision as part of the section 1983 action. Finally, the district court granted summary judgment on Figg's state-law claims because they were premised on illegal incarceration, and the writ had been vacated.

Figg appeals the district court's dismissal of her section 1983 action and state-law claims, and asserts that the court erred in dismissing her actions when no motion was pending.

## II.    DISCUSSION

We review the district court's grant of summary judgment de novo, Wilson v. Spain, 209 F.3d 713, 716 (8th Cir. 2000), and may affirm the district court on any basis supported by the record. Gonzales-Perez v. Harper, 241 F.3d 633, 638 n.6 (8th Cir. 2001).

### A.    Procedure Used In Granting Summary Judgment

Figg first asserts that the district court erred in granting summary judgment to defendants because no motion was pending before the court at the time. In its order denying without prejudice defendants' motion for summary judgment, the district court stated that defendants could reassert their motions for summary judgment without refiling the relevant documents, after the state habeas court had resolved

defendants' motion to vacate the writ.  Figg asserts that she had no opportunity to argue that Heck did not apply to her claims because she had no notice that the district court would grant the defendants summary judgment, apparently sua sponte.  Sua sponte orders of summary judgment will be upheld "only when the 'party against whom judgment will be entered was given sufficient advance notice and an adequate opportunity to demonstrate why summary judgment should not be granted.'"  Shur-Value Stamps, Inc. v. Phillips Petroleum Co., 50 F.3d 592, 595 (8th Cir. 1995) (quoting Interco Inc. v. Nat'l Sur. Corp., 900 F.2d 1264, 1269 (8th Cir. 1990)).  Figg was on notice that the court might grant summary judgment without defendants having to refile their motion.  But more importantly, "a party waives the notice requirement when it fails to object based on insufficient notice and fails to assert prejudice."  Id.  Nothing in the record indicates that Figg raised an objection before the district court when summary judgment was entered, and thus she has waived any defect in notice.

## B.    Defendants' Entitlement to Immunity

Though the district court granted summary judgment on the basis that Figg's section 1983 claim was barred by Heck, we find that the defendants are immune from suit notwithstanding the court's Heck analysis.  "'An absolute immunity defeats a suit at the outset, so long as the official's actions were within the scope of the immunity.'"  Patterson v. Von Riesen, 999 F.2d 1235, 1237 (8th Cir. 1993) (quoting Imbler v. Pachtman, 424 U.S. 409, 419 n.13 (1976)) (alteration omitted).  Defendants moved for summary judgment based on absolute immunity, and we affirm on that basis.[1]

[1]Defendants also based their motion on Eleventh Amendment and qualified immunity.  We need not reach these arguments, however, as we dispose of the case under absolute immunity.

Defendants Robert Hofer and Mary Lou Jorgensen were members of the Parole Board. We have said that "parole board members are absolutely immune from suit when considering and deciding parole questions." Id. at 1238-39. Figg's section 1983 claim against the Parole Board members is that as a result of violating her due process rights by failing to inform her that parole violations would affect her suspended sentence, she was illegally incarcerated when the Parole Board reinstated her suspended sentence. Though the Parole Board found that Figg had violated her *parole*, Figg's claim is based on the board's decision to reinstate her *suspended sentence*. In determining whether officials have acted within their official jurisdiction for purposes of absolute immunity, "the inquiry focuses on whether the subject matter of the decision was within the official's power, and whether the official was acting in her official capacity at the time of decision." Id. at 1239. Thus, though Figg's claim is not based on the Parole Board's decision regarding her parole per se, absolute immunity will still attach in this case if the board members have the power to make decisions regarding suspended sentences.

South Dakota law provides that "[t]he [Parole Board] is charged with the responsibility for enforcing the conditions imposed by the sentencing judge, and the board retains jurisdiction to revoke the suspended portion of the sentence for violation of the terms of the suspension." S.D. Codified Laws § 23A-27-19. See Smith, 515 N.W.2d at 221-22. Given that the November Agreement states that "the rules of parole supervision shall also apply to the suspended portion of [Figg's] sentence," when Figg violated her parole, she also violated the terms of her suspended sentence. "The operation of law . . . [does] not *automatically* translate the conditions of [Figg's] parole into the conditions of [her] suspended sentence. *That is certainly within the power of the Board of Pardons and Paroles and [is] easily accomplished.*" Id. at 224 (emphasis added). If the defendant is given notice, "the Board of Pardons and Paroles may impose conditions on a defendant's suspended sentence in addition to those imposed by the sentencing court so long as the additional conditions are reasonable and not inconsistent with those mandated by the court." Id. The state habeas court

found that Figg received and remembered signing the November Agreement. Accordingly, the Parole Board was within its power when it applied the conditions of Figg's parole to her suspended sentence, and when it took action concerning her suspended sentence when she violated parole. Thus, under our holding in Patterson, the Parole Board's actions regarding Figg's parole and suspended sentence are entitled to absolute immunity.[2]

Defendant Duane Russell was the warden of the South Dakota Women's Prison. Defendant Brenda Hyde was an employee of the prison. Like defendants Hofer and Jorgensen, they are entitled to absolute immunity. Figg's suit against Russell and Hyde is based on the fact of her confinement and the resulting deprivation of rights attending that status.[3] In Patterson, the plaintiff brought a section 1983 action against the wardens of the prison in which he was incarcerated after he was issued a writ of habeas corpus. In affirming the dismissal of the claim, this court held that jailors and wardens are "absolutely immune from damages flowing from the *fact* of a prisoner's incarceration, when that incarceration occurs pursuant to a facially valid order of

---

[2]Even if the Parole Board had acted in violation of Figg's constitutional rights, as Figg asserts, those actions would not fall outside the board's power, such that absolute immunity would not apply. "An official does not act outside her jurisdiction simply because she makes an unconstitutional or unlawful decision." Patterson, 999 F.2d at 1239. Rather, the subject matter of the action is the measure of the board's proper exercise of power. "A decision about whether or not to grant parole is at the heart of a parole board member's jurisdiction, whether that decision is based on lawful or unlawful considerations." Id. In this case, decisions regarding a suspended sentence are also at the heart of the board members' jurisdiction, and thus are entitled to absolute immunity.

[3]Figg's complaint states that "[d]uring the 416 days that Nicole Figg was illegally detained in prison, she was treated in all respects as a penitentiary inmate and subjected to the same restrictions, deprivations of freedom, sanctions, and punishments as those inmates who were rightfully being imprisoned in the South Dakota Women's Prison."

confinement." 999 F.2d at 1241. During the 416 days that Figg alleges she was confined "illegally," the state habeas court had not yet issued her writ, and thus the jailors and warden were acting pursuant to facially valid orders from the Eighth Judicial Circuit Court of South Dakota and the Parole Board. "'Officials such as the [wardens] must not be required to act as pseudo-appellate courts scrutinizing the orders of judges.'" Id. (quoting Valdez v. City & County of Denver, 878 F.2d 1285, 1289 (10th Cir. 1989)). Defendants Russell and Hyde are entitled to absolute immunity.

The basis for Figg's suit against defendant Brent Walker, a parole agent and administrative assistant to the Parole Board, is not clear. Her complaint alleges that Walker offered her the October Agreement for parole, which she accepted, but the agreement did not state that conditions applicable to her parole likewise applied to her suspended sentence. She contends only that "defendants" failed to notify her that her parole conditions applied to the suspended sentence. Thus, Figg's claim appears to be that Walker participated in the alleged due process violation that led to her incarceration.

"Parole agents" in South Dakota are apparently akin to "parole officers" in other states, responsible for "direct supervision of parolees on a daily basis." S.D. Codified Laws § 3-12-47. "[T]he extent of immunity accorded an official depends solely on the official's function." Nelson v. Balazic, 802 F.2d 1077, 1078 (8th Cir. 1986). The Supreme Court has held that "judicial, prosecutorial, and legislative functions require absolute immunity." Id. (citing Harlow v. Fitzgerald, 457 U.S. 800 (1982)). We have found parole officers to be entitled to either absolute immunity or qualified immunity depending on the function at issue. Id. at 1078-79 (finding parole officer entitled only to qualified immunity because the officer's decision not to take a parolee into custody was not a quasi-judicial function or prosecutorial decision; the decision was akin to function of police officer); Anton v. Getty, 78 F.3d 393 (8th Cir. 1996) (finding parole officers entitled to absolute immunity where they made recommendations to parole

board that parole be delayed, similar to quasi-judicial function performed by parole officers preparing presentence reports).

In the instant case, Walker's only function was to offer Figg the October Agreement, without giving her notice that the terms of parole applied to the suspended sentence. This is essentially the same claim Figg brings against the Parole Board members. Thus, we think Walker's function in this case is so associated with the function of the Parole Board that he, too, is cloaked in absolute immunity. See S.D. Codified Laws § 24-15-1.1. Walker apparently made no independent decisions in offering the October Agreement to Figg. When he offered the agreement to her, he acted as a representative of the Parole Board, conveying to Figg the board's decision. His actions were so connected to the quasi-judicial role the Parole Board performed in granting parole in the first place, that they were but an extension of that function. So, at least in this limited sense, Walker is entitled to absolute immunity. See Anton, 78 F.3d at 396 (holding parole officers entitled to absolute immunity because their recommendations that parole be delayed "had a similar, close connection" to parole board commissioner's decision to delay parole).

### C.    Dismissal of State-Law Claims

The district court also granted summary judgment to defendants on Figg's state-law causes of action for false imprisonment, invasion of privacy, infliction of emotional distress, battery, assault, and negligence because they were "premised on the illegality of Plaintiff's incarceration." Collateral estoppel does not bar the litigation of these claims because the issue central to each of them–whether Figg's incarceration was unlawful–has not been determined by a valid and final judgment. See Morse v. C.I.R., 419 F.3d 829, 834 (8th Cir. 2005). Though the state habeas court *vacated* its earlier grant of the writ because Figg's lack of candor in the first proceeding "very likely would have changed the results," the court did not substantively *deny* Figg habeas relief, it simply refused to continue to consider the

merits of her claim because of her fraud upon the court. Thus, the vacatur does not equal a final and valid *determination* of the soundness of Figg's due process allegation although the appearance of the November Agreement appears to have dealt a fatal blow to her contentions. We have found nothing in the record to support jurisdiction based on diversity, and both parties agree the district court exercised supplemental jurisdiction over Figg's state-law claims. In this case, when the district court dismissed the federal section 1983 action, we believe it should have exercised its discretion to dismiss the state-law claims without prejudice, leaving it to Figg to determine whether to reassert them in state court. See ACLU v. City of Florissant, 186 F.3d 1095, 1098-99 (8th Cir. 1999) (holding that where state and federal claims are joined and federal claims are dismissed by summary judgment, the state claims are usually dismissed without prejudice in the interests of comity).

## III.   CONCLUSION

We affirm the district court's dismissal of Figg's section 1983 claim on the grounds of absolute immunity. We reverse the district court's grant of summary judgment on Figg's state-law claims, and remand for dismissal of those claims without prejudice.

_____