# United States Court of Appeals

### For the Eighth Circuit

_____

No. 13-1720

_____

Equal Employment Opportunity Commission

*Plaintiff - Appellant*

v.

Audrain Health Care, Inc., doing business as Audrain Medical Center

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Eastern District of Missouri - Hannibal

_____

Submitted: January 13, 2014
Filed: June 30, 2014

_____

Before GRUENDER, BRIGHT, and KELLY, Circuit Judges.

_____

BRIGHT, Circuit Judge.

The Equal Employment Opportunity Commission (EEOC) brought an action against Audrain Health Care, Inc., (Audrain) alleging that Audrain violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and Title I of the Civil Rights Act of 1991, 42 U.S.C. § 1981a, by refusing to consider transferring David Lunceford to a vacant operating room nurse position on the basis of his sex. The

district court[1] denied relief in a summary judgment of dismissal. The EEOC appeals. Having jurisdiction under 28 U.S.C. § 1291, we affirm.

## I. Background

Since 2004, Lunceford has worked as a registered nurse at Audrain, a medical center located in the City of Mexico, Missouri. During his time at Audrain, Lunceford had worked in several departments, including the Critical Care Unit (CCU) and the Post Anesthesia Care Unit (PACU). The present dispute arose following Audrain's posting of two vacant nursing positions and Lunceford's subsequent attempts to transfer to such a position.

### a. Audrain's Transfer Policy

Audrain allows nurses to transfer between nursing units in the various departments and posts vacancy notifications when openings arise to allow current employees to apply for a transfer. Pursuant to Audrain's transfer policy, an interested employee becomes eligible to transfer only after having been in his or her current position for a minimum of six months unless the two impacted department directors agree to an early transfer. To apply for a transfer, interested employees are not to contact the department where the vacancy exists but must instead complete a "Request to Transfer" form. If an employee wants to apply for more than one open position, the employee must fill out a separate form for each position. Once the employee completes the form, the Human Resources Department (HR) determines the employee's eligibility by reviewing the employee's personnel file for performance issues and ensuring that the employee meets the qualification requirements for the position.

---

[1]The Honorable Nannette A. Baker, United States Magistrate Judge for the Eastern District of Missouri.

If the employee passes the initial screening and obtains approval from HR, HR then routes a personnel action form to the relevant department directors and a member of the executive administration for approval. Upon approval, the transfer is deemed effective, although it may take up to 30 days for the transfer to take place to allow the department from which the employee is transferring to address any replacement needs that the transfer may create. Once an employee obtains administrative approval of a transfer, he or she is not eligible to transfer to another position except as provided in the transfer policy. Since January 1, 2009, Audrain made exceptions for five employees who did not meet the six-month requirement. None of those employees transferred to a specialized unit without having prior experience in those units.

### b. The Vacancy

In March 2010 while Lunceford was working part-time in PACU, Audrain posted two job vacancies for nursing positions. On March 10, 2010, Audrain posted a vacancy for a nursing position in the Operating Room (OR). On March 18, 2010, Audrain posted a vacancy for a nursing position in CCU.

On March 22, 2010, Lunceford completed a "Request for Transfer" form requesting to transfer from PACU to CCU. That same day, HR preliminarily approved his request. On March 26, 2010, Linda Brooks, the clinical coordinator of PACU and the OR, approved the request. On March 30, 2010, the Audrain CEO approved the request. Lunceford was then scheduled to start in CCU beginning April 22, 2010.

On April 16, 2010, Lunceford asked Brooks if she would consider him or train him for the OR position. At the time, Lunceford did not have any experience as an OR nurse and was not qualified for the position without further training for the unit, which requires specialized, specific job knowledge. During the conversation, which took place in front of at least two other people, Brooks told Lunceford that she wanted

to fill the position with a woman in order to have the right mix of patients to staff based on gender. According to Lunceford, Brooks replied, "I hate to discriminate against you because you're a man, but the doctors want more female nurses in the OR." Brooks disputes saying she would "hate to discriminate against you," but admits that she told Lunceford that she wanted to fill the position with a woman to have the right mix of patients to staff. Audrain has both a non-discrimination policy and a Patient's Rights and Responsibilities Policy, which gives an Audrain patient the right to have a health care provider of the same gender in the room during treatment.

Lunceford reported his conversation with Brooks to Kari Wilson, Audrain's Vice President of Clinical Services and Chief Nursing Officer. Lunceford told Wilson that he no longer wanted to work for Brooks and left Wilson with the impression that he was no longer interested in the OR position. Lunceford also reported the conversation to HR Director Christy Smiley.

Lunceford never filled out a "Request for Transfer" form for the OR position. In July 2010, Audrain filled the vacant OR position with the same experienced OR nurse who had left the position, a female nurse with eleven years of OR nursing experience. Prior to Lunceford's conversation with Brooks, a female nurse employed had requested a transfer to the OR position, but Audrain did not consider her because she had no OR nursing experience. No other individuals requested to transfer to the OR position.

### c. Procedural History

In August 2011, the EEOC brought this action alleging that Audrain violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, and Title I of the Civil Rights Act of 1991, 42 U.S.C. § 1981a, by refusing to consider Lunceford for the OR position on the basis of his sex. Audrain moved for summary judgment, arguing that it did not discriminate against Lunceford because he did not

apply for the OR position and was neither eligible nor qualified for it. The EEOC moved for partial summary judgment as to liability. The district court granted Audrain's motion, denied the EEOC's motion, and entered judgment for Audrain. The EEOC appeals.

## II. Discussion

This court reviews a district court's grant of summary judgment de novo "and may affirm the district court on any basis supported by the record." *Figg v. Russell*, 433 F.3d 593, 597 (8th Cir. 2006). "Summary judgment is appropriate when the evidence viewed in the light most favorable to the nonmoving party presents no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Coates v. Powell*, 639 F.3d 471, 475 (8th Cir. 2011); *see also* Fed. R. Civ. P. 56(a). "The nonmovant 'must do more than simply show that there is some metaphysical doubt as to the material facts,' and must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

"Title VII of the Civil Rights Act of 1964 makes it 'an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.'" *Vance v. Ball State Univ.*, 133 S. Ct. 2434, 2440 (2013) (alteration in original) (quoting 42 U.S.C. § 2000e-2(a)(1)). In an employment discrimination action, an employee may survive an employer's summary judgment motion in one of two ways. *McCullough v. Univ. of Ark. for Med. Scis.*, 559 F.3d 855, 860 (8th Cir. 2009). First, "[t]he employee may produce direct evidence of discrimination, which is 'evidence showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually

motivated the adverse employment action.'" *Id.* (quoting *Russell v. City of Kansas City, Mo.*, 414 F.3d 863, 866 (8th Cir. 2005)). In the alternative, the employee may create an inference of discrimination through the three-stage burden-shifting framework established in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973). *Ames v. Nationwide Mut. Ins. Co.*, 747 F.3d 509, 512 (8th Cir. 2014). To do so, the EEOC must first establish a prima facie case of discriminatory failure to hire by proving that: (1) Lunceford belongs to a protected class; (2) Lunceford applied and was qualified for a job for which Audrain was seeking applicants; (3) Audrain rejected Lunceford; and (4) after rejecting Lunceford, Audrain continued to seek applicants with his qualifications. *Hunter v. United Parcel Serv., Inc.*, 697 F.3d 697, 703 (8th Cir. 2012). If the EEOC establishes a prima facie case, Audrain "then bears the burden of providing a legitimate, non-discriminatory basis for the alleged adverse action." *Id.* "If [Audrain] meets its burden, in the third stage, [the EEOC] must show that a genuine issue of fact exists as to whether [Audrain]'s stated reason for the adverse action is pretextual." *Id.*

Here, the district court concluded that the EEOC failed to establish direct evidence of discrimination and could not establish a prima facie case of discrimination under *McDonnell Douglas*. The EEOC challenges both conclusions. Because in either case the EEOC must demonstrate that Lunceford suffered an adverse employment action, we focus our analysis on that question.

The district court concluded that Lunceford did not suffer an adverse employment decision because he never completed a Request for Transfer form so Audrain never made a decision to deny him the OR nurse position. The EEOC argues that a jury could conclude that Lunceford's failure to apply for a transfer is excused because Brooks' comment made it clear that applying for the position would be futile. In doing so, the EEOC relies on language from the Supreme Court's decision in *International Brotherhood of Teamsters v. United States*, 431 U.S. 324 (1977), in which the Court stated that "[v]ictims of gross and pervasive discrimination" are not

required to apply formally for a position if they can establish that the employer's discriminatory practices deterred them from applying for a job. *Id.* at 367-68. But here, the EEOC has not presented evidence that Audrain fostered an atmosphere of "gross and pervasive discrimination" similar to the underlying discrimination at issue in *Teamsters*. *See id.* at 367-68, 328-31. Additionally, *Teamsters* involved a class action and may be inapplicable to the present case because such analysis "is usually applied in other class actions, rather than to actions brought by individual plaintiffs." *Lockridge v. Bd. of Trs., of the Univ. of Ark.*, 315 F.3d 1005, 1011 (8th Cir. 2003) (en banc); *see Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 355-56 (5th Cir. 2001); *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 711 (2d Cir. 1998); *Craik v. Minnesota State Univ. Bd.*, 731 F.2d 465, 469-70 (8th Cir. 1984).

In any event, this court has reiterated that "an employee who does not formally apply must make 'every reasonable attempt to convey his [or her] interest in the job to the employer' before he or she may prevail on a discrimination claim." *Lockridge*, 315 F.3d at 1011 (quoting *Chambers v. Wynne Sch. Dist.*, 909 F.2d 1214, 1217 (8th Cir. 1990)) (alteration in original) (internal quotation marks omitted); *see also Jackson v. United Parcel Serv., Inc.*, 643 F.3d 1081, 1086 (8th Cir. 2011) (same). Here, Lunceford did not make "every reasonable attempt to convey" his interest. He did not apply for the position. Lunceford had a single conversation with Brooks about the position and in a subsequent conversation with Brooks' supervisor, he told the supervisor that he no longer wanted to work for Brooks. Moreover, although the OR vacancy was the first of the two posted vacancies, Lunceford expressed his interest in the OR position to Brooks nearly a month after he requested—and Brooks approved—a transfer to PACU, and just six days before he was due to start in PACU. In light of this evidence, Lunceford did not make "every reasonable attempt to convey" his interest in the OR position and the district court did not err in concluding that the EEOC did not establish a claim of employment discrimination.

## III.  Conclusion

Accordingly, we affirm.

_____