2015 S.D. 13

**Travis MANN, Appellant,**

**v.**

**SOUTH DAKOTA BOARD OF PARDONS AND PAROLES, Appellee.**

**No. 27057.**

Supreme Court of South Dakota.

Considered on Briefs Jan. 12, 2015.

Decided March 11, 2015.

Jason R. Adams of Nicholson, Tschetter, Adams & Nicholson Law Office, PC, Sioux Falls, South Dakota, Attorneys for appellant.

Marty J. Jackley, Attorney General, Ashley E.H. McDonald, Special Assistant Attorney General Sioux Falls, South Dakota, Attorneys for appellee.

WILBUR, Justice.

[¶ 1.] While serving the unsuspended portion of his sentence in the South Dakota State Penitentiary, Travis Mann signed a suspended sentence supervision agreement. Subsequently, the Board of Pardons and Paroles (Board) revoked Mann's suspended sentence, concluding that Mann had violated the conditions of the agreement. Mann challenges the Board's action. We affirm.

### Background

[¶ 2.] On February 13, 2007, Mann pleaded guilty to two charges of second-degree robbery. The circuit court sentenced Mann to seven years in the penitentiary with two years suspended for the first conviction, and eight years in the penitentiary with two years suspended for the second conviction, to be served consecutively. For each conviction, the sentencing court imposed conditions on the suspended portion of the sentence, requiring Mann to pay restitution to Brookings

County for fees and costs and to the victims of the robbery.[1]

[¶ 3.] On September 28, 2011, Mann signed a suspended sentence supervision agreement. The Department of Corrections (Department) informed Mann that a failure to sign the agreement could result in imposition of the suspended portion of his sentence. One of the conditions included in the agreement required Mann to "conform to the rules and program requirements of the Department of Corrections, maintain a good disciplinary record and satisfactorily participate in programs as assigned."[2] Mann was notified and advised that a violation of this agreement could result in the revocation of his suspended sentence.

[¶ 4.] Prior to August 2011, no inmate serving a sentence with a portion of his sentence suspended was required to sign a suspended sentence supervision agreement like the one signed by Mann. Instead, an inmate who committed a major rule violation did not have his suspended sentence imposed unless he had signed a community supervision agreement. The Board typically presented an inmate with the community supervision agreement 60 days before his release. In August 2011, the Board implemented a new policy that required all inmates with a suspended sentence to sign an agreement similar to the agreement signed by Mann instead of a community supervision agreement. Unlike the community supervision agreement, the suspended sentence supervision agreement is typically presented to an inmate earlier than 60 days before his release. In this case, the agreement was presented to Mann approximately 18 months before his release. According to the Board, the purpose of the suspended sentence supervision agreement is to prevent violent, abusive behavior by an inmate, which in turn protects staff and inmates, as well as to promote positive behavior by an inmate in order to reduce his risk to the community at large once he is released.

[¶ 5.] The process of review for a violation of the suspended sentence supervision agreement is as follows. Each month, a computer report is generated that shows which inmates (1) are serving a sentence that will transition to suspended sentence in four months or less and are refusing sex offender treatment; (2) are serving a sentence that will transition to suspended sentence in three months or less and have received a category 4 or 5 rule violation; and (3) are serving a sentence that includes a suspended period of time and have received a category 5 rule violation

1. For the first robbery conviction, the circuit court suspended two years of the sentence upon the following conditions: (1) that Mann pay restitution to Brookings County for the fees and costs paid by the County to Mann's Court Appointed Counsel; and (2) that Mann pay restitution of $705 to the victim.
   For the second robbery conviction, the circuit court suspended two years of the sentence upon the following conditions: (1) that Mann pay restitution to Brookings County for the fees and costs paid by the County to Mann's Court Appointed Counsel; and (2) that Mann pay restitution of $8,752.31 to the victims.

2. Mann's suspended sentence supervision agreement contained the following language:

I understand and agree that in the event I violate these conditions prior to my suspended sentence commencing, the Board has the authority to revoke the suspended portion and impose the entire sentence.
I will conform to the rules and program requirements of the Department of Corrections, maintain a good disciplinary record and satisfactorily participate in programs as assigned.
.... I specifically acknowledge that I have been warned/advised that a violation of this agreement can result in my suspended sentence being revoked prior to my release to serve such suspended sentence.

within the last 30 days. This list is sent to the warden of each facility for review and recommendations for referral to the Board to determine if revocation of the inmate's suspended sentence is appropriate.

[¶ 6.] Between January and April 2012, Mann received four major rule violations. Mann received three major rule violations for "conduct that disrupts"[3] and one major rule violation for "threatening staff."[4] On January 16, 2012, Mann received a "conduct that disrupts" violation after an incident where he told an officer that if he does not get an institutional job at the penitentiary, he will barricade himself in his cell and the staff will have to "suit up" to remove him. Then, on April 25, 2012, Mann received a second "conduct that disrupts" violation after an officer told Mann that his behavior needed to improve or he would move Mann to another cell, and Mann responded that the only room change he would make was to the Special Housing Unit.[5]

[¶ 7.] Mann received a third and fourth major rule violation on July 18, 2012. He received the third "conduct which disrupts" violation after an incident where he covered the cell window and camera in the Special Housing Unit. The staff had to use force to restrain Mann and remove the obstructions. Mann received the "threatening staff" violation after he told an officer that the staff would need to "suit 'em up" and that it would take a team of officers to handcuff him. When the staff opened his cell door, Mann pushed the door causing an officer to fall to the ground. The staff eventually restrained Mann by placing him in a restraint chair. Mann threatened to fight the staff each time he was let out of the restraint chair. For each of the four major rule violations, Mann was sanctioned to the Special Housing Unit. Associate Warden Troy Ponto testified that major rule violations for "conduct that disrupts" and "threatening staff" are very severe. Because of these four major rule violations, Ponto recommended that the Board review Mann's case.

[¶ 8.] On April 8, 2013, a revocation hearing was held before two Board members. The Board entered findings of fact and conclusions of law. The Board ordered that the suspended sentence for the first robbery conviction be revoked and imposed, and that the suspended sentence for the second robbery conviction be revoked, imposed, and re-suspended. The Board set a discretionary parole review date for July 2014. On March 11, 2014, the circuit court issued a memorandum decision affirming the Board. Mann appeals and raises the following issues for our review:

1. Whether the Board exceeded its authority in imposing conditions on Mann that were inconsistent with

---

3. A "4–35" major write-up for conduct that disrupts is defined as "Conduct which disrupts or interferes with the security or good order of the institution or interfering with a staff member in the performance of his/her duties including circumventing or attempting to circumvent any rule, regulation or procedure contained in DOC policies or institutional operational memorandums."

A "5–17" major write-up for conduct which disrupts is defined as "Conduct that disrupts or interferes with the security or good order of the institution or interferes with a staff member in the performance of his/her duties

and clearly poses a threat to the safety of staff or other inmates."

4. A "5–12" major write-up is defined as "Threatening any non-inmate (e.g. staff, volunteers, visitors, etc.) with bodily harm or with any offense against his/her person, his/her family or his/her property."

5. The Special Housing Unit is alternatively known as disciplinary segregation. Inmates are placed in their cell for 23 hours a day and are released for 45 minutes to take a shower and for recreation.

those placed by the sentencing court.

2. Whether Mann's equal protection rights were violated when he was treated differently than other inmates.

## Analysis

[¶ 9.] **1. The Board did not exceed its authority in imposing additional conditions that were "not inconsistent" with those placed by the sentencing court.**

[¶ 10.] We review appeals from the Board under SDCL 1–26–37.[6] *Austad v. S.D. Bd. of Pardons & Paroles*, 2006 S.D. 65, ¶ 8, 719 N.W.2d 760, 764. We "review questions of fact under the clearly erroneous standard; mixed questions of law and fact and questions of law are reviewed de novo." *Acevedo v. S.D. Bd. of Pardons & Paroles*, 2009 S.D. 45, ¶ 7, 768 N.W.2d 155, 158 (quoting *Austad*, 2006 S.D. 65, ¶ 8, 719 N.W.2d at 764) (internal quotation marks omitted). " 'Matters of discretion are reviewed under an abuse of discretion standard.' " *Id.* (quoting *Austad*, 2006 S.D. 65, ¶ 8, 719 N.W.2d at 764).

[¶ 11.] The Board is responsible for enforcing the conditions imposed by the sentencing court, and retains jurisdiction to revoke the suspended portion of the sentence for violation of the terms of parole or suspension. SDCL 23A–27–18.4 provides in relevant part:

A defendant with a partially suspended penitentiary sentence is under the supervision of the Department of Corrections and the Board of Pardons and Paroles. The board is charged with the responsibility for enforcing the conditions imposed by the sentencing judge, and the board retains jurisdiction to revoke the suspended portion of the sentence for violation of the terms of parole or the terms of the suspension.

In addition, we have previously held that the Board can impose additional conditions subject to certain restrictions. *See Austad*, 2006 S.D. 65, ¶ 22, 719 N.W.2d at 768; *Smith v. S.D. Bd. of Pardons & Paroles*, 515 N.W.2d 219, 224 (S.D.1994); *Robinson v. Leapley*, 515 N.W.2d 216, 218 (S.D. 1994); *Turo v. Solem*, 427 N.W.2d 843, 846 (S.D.1988).

[¶ 12.] Mann argues that the conditions imposed by the Board were inconsistent with the conditions imposed by the sentencing court. "We have recognized that 'the Board of Pardons and Paroles may impose conditions on a defendant's suspended sentence in addition to those imposed by the sentencing court so long as the additional conditions are reasonable and *not inconsistent* with those mandated by the court.' " *Austad*, 2006 S.D. 65, ¶ 22, 719 N.W.2d at 768 (emphasis added) (quoting *Smith*, 515 N.W.2d at 224). Mann does not argue that the conditions were unreasonable. Thus, we need only consider whether the conditions were "not inconsistent" with the sentencing court.[7]

[¶ 13.] Mann claims that the Board-imposed conditions are plainly in-

---

6. SDCL 1–26–37 provides:

An aggrieved party or the agency may obtain a review of any final judgment of the circuit court under this chapter by appeal to the Supreme Court. The appeal shall be taken as in other civil cases. The Supreme Court shall give the same deference to the findings of fact, conclusions of law, and final judgment of the circuit court as it does to other appeals from the circuit court.

Such appeal may not be considered de novo.

7. Mann claims that the correct standard is whether the conditions imposed by the Board are "reasonable and consistent" with the conditions imposed by the sentencing court, not whether the conditions are "reasonable and *not inconsistent*." Mann alleges that this Court in *Smith* inadvertently changed the standard from *Turo*. *See Turo*, 427 N.W.2d at

consistent with the conditions imposed by the sentencing court. First, Mann points out that the conditions imposed by the sentencing court were financial conditions, whereas the conditions imposed by the Board were behavioral conditions. Mann contends that the sentencing court used the suspended time to make sure that he repaid the financial obligations arising from the charges. The sentencing court did not impose any condition requiring Mann to obey the institutional rules of the penitentiary.

[¶ 14.] We reject this argument. Simply because the conditions imposed by the sentencing court were "financial" in nature and the conditions imposed by the Board were "behavioral" in nature does not preclude the conclusion that the conditions are not inconsistent with each other. Indeed, the conditions imposed by the sentencing court required Mann to pay restitution to the victims and Brookings County. Conditions requiring an inmate to pay restitution can rehabilitate an inmate by requiring the inmate to take financial responsibility for his actions. Likewise, conditions that subject an inmate to institutional rules can also help rehabilitate an inmate by ensuring that he is fit to be reintroduced into society. *See Austad*, 2006 S.D. 65, ¶ 25, 719 N.W.2d at 769 (stating that "[c]onditions which subject inmates to institutional rules and preclude threats of violence promote the legitimate penological objectives to deterring crimes, rehabilitating prisoners, and promoting institutional se-

curity"). Furthermore, the conditions imposed by the Board did not contradict or interfere with Mann's obligation to pay restitution to the victims and Brookings County.

[¶ 15.] Next, Mann points out that the Board requires inmates to sign the suspended sentence supervision agreement without ever considering whether the conditions are inconsistent with the conditions imposed by the sentencing court. Mann alleges that this requirement undermines the intent of SDCL 23A–27–18.4, which makes the Board responsible for enforcing the conditions imposed by the sentencing court. We note, however, that the question before this Court is not whether there is a procedural requirement for the Board to compare the conditions of the suspended sentence supervision agreement with the conditions imposed by the sentencing court, but merely whether the conditions actually imposed by the Board are inconsistent with the conditions imposed by the sentencing court.

[¶ 16.] Finally, Mann argues that the Legislature has not provided the Board with authority to revoke an inmate's suspended time for a violation of institutional rules. In support of this argument, Mann cites to SDCL 24–15A–4, which grants the Department authority to punish an inmate who violates an institutional rule and provides a list of seven punishments.[8] Mann points out that revocation of a suspended sentence is not included in the list of punishments under SDCL 24–15A–4, and therefore, in Mann's view, the Board

846 ("So long as the conditions of release imposed by the Board of Pardons and Paroles are *reasonable and consistent* with those imposed on a suspended sentence by a sentencing judge...." (Emphasis added.)); *Smith*, 515 N.W.2d at 224 ("[T]he Board of Pardons and Paroles may impose conditions on a defendant's suspended sentence in addition to those imposed by the sentencing court so long as the additional conditions are *reasonable*

*and not inconsistent* with thóse mandated by the court." (Emphasis added.)). However, in *Austad*, we reaffirmed the language in *Smith*. *Austad*, 2006 S.D. 65, ¶ 22, 719 N.W.2d at 768. We therefore reject Mann's argument.

8. SDCL 24–15A–4 provides:

did not have authority to revoke an inmate's suspended time for a violation of institutional rules. Moreover, Mann further notes that he was already punished for violating the institutional rules because, for each major rule violation, he was sanctioned to the Special Housing Unit.

[¶ 17.] But, the Board's authority to revoke the suspended sentence does not derive from SDCL 24–15A–4; rather, it derives from SDCL 23A–27–18.4. Furthermore, in *Austad*, we upheld an agreement similar to the one that Mann signed. 2006 S.D. 65, ¶ 25, 719 N.W.2d at 769 (holding that "the Board maintains discretion to revoke an inmate's suspended sentence if the inmate commits offenses that demonstrate he is unworthy of the suspension"). Mann acknowledged when he signed the agreement that a violation of the suspended sentence supervision agreement may result in the revocation of the suspended portion of his sentence. Thus, we reject Mann's argument that the Board did not have authority to revoke his suspended sentence.

[¶ 18.] **2. Mann was not treated differently than a similarly-situated class of inmates and his equal protection rights were not violated.**

[¶ 19.] Mann argues that the Board violated his constitutional right of equal protection under the laws when his case was recommended to the Board for a determination of whether his suspended sentence should be revoked. He claims other similarly situated inmates did not have their cases recommended to the Board. During the time frame involved in this case, 110 inmates met one or more of the criteria for review by the wardens to determine whether his case should be recommended to the Board. The wardens from each facility reviewed 91 of the 110 cases for referral to the Board.[9] After reviewing the cases, the wardens recommended that the Board review 48 of the 91 cases. The remaining 43 cases were recommended for no action. Mann's case was forwarded to the Board based on the opinion of Associate Warden Ponto.[10]

[¶ 20.] The Fourteenth Amendment to the United States Constitution and Article VI, § 18 of the South Dakota Constitution guarantee equal protection of the laws to all people. This equal protection guarantee applies to prison inmates. *Austad*, 2006 S.D. 65, ¶ 18, 719 N.W.2d at 767 (citing *Murphy v. Miss. Dep't of Corr.*, 372 F.3d 979, 984 (8th Cir.2004)). "For an equal protection claim, an inmate must prove that he was treated differently from a similarly situated class of inmates, that

---

Any inmate violating the rules or institutional policies is subject to any of the following disciplinary sanctions:
  (1) Disciplinary segregation;
  (2) Imposition of fines;
  (3) Loss of privileges;
  (4) Additional labor without compensation;
  (5) Referral to various programs;
  (6) Transfer to a more secure housing unit;
  (7) Change in classification status.
No corporal punishment may be inflicted upon inmates in the penitentiary.

9. Of the 110 inmates, 19 had cases that did not qualify for review. Nine of the inmates had not signed a suspended sentence supervision agreement. Ten inmates had a sentence separate from the suspended sentence that was longer than the suspended sentence.

10. Mann contends that the Legislature gave authority to the Board, not the wardens, for determining which inmates should have their sentences revoked. *See* SDCL 23A–27–18.4. This argument does not present an equal protection claim. Nonetheless, we note that the wardens do not make the final determination to revoke an inmate's suspended sentence. The Board makes that final determination as is required by SDCL 23A–27–18.4.

such treatment burdens one of his fundamental rights, and that the different treatment bears no rational relation to any legitimate penal interest." *Id.*

[¶ 21.] Mann contends that each of the three prongs is satisfied. For the first prong—whether Mann was treated differently from a similarly situated class of inmates—Mann argues that he was treated differently than the 43 inmates that were not recommended to the Board for revocation. Mann also alleges that he was treated differently than the inmates who received major institutional violations prior to August 2011. Inmates who received major violations prior to August 2011 did not have their suspended sentences revoked and imposed unless they had signed a community supervision agreement before release.

[¶ 22.] Mann fails to meet his burden of showing that he was treated differently from a similarly situated class of inmates. *See Austad,* 2006 S.D. 65, ¶ 18, 719 N.W.2d at 767. Mann was treated in the same manner as the 43 inmates who were not recommended to the Board for revocation. The inmates were all equally subject to revocation by the Board and were subject to the same process of review.

[¶ 23.] Additionally, Mann was treated in the same manner as the inmates who received major rule violations before August 2011. Prior to August 2011, any inmate who committed a major rule violation, including Mann, was not subject to revocation of his suspended sentence unless the inmate had signed the community supervision agreement. Likewise, the implementation of the suspended sentence supervision agreement in August 2011 applied to all inmates, including Mann, serving a sentence with a suspended portion. Every inmate with a suspended sentence was treated similarly prior to August 2011 and was treated similarly after August 2011. Mann has failed to establish that he was treated differently than a similarly situated class of inmates. Thus, we need not consider the remaining two prongs. *See Klinger v. Department of Corrections,* 31 F.3d 727, 731 (8th Cir.1994) (stating that absent a threshold showing that a person is treated differently than a similarly situated class of individuals, the person "does not have a viable equal protection claim"). Mann fails to present any evidence that his equal protection rights were violated. *See Austad,* 2006 S.D. 65, ¶ 21, 719 N.W.2d at 768.

## CONCLUSION

[¶ 24.] The conditions on Mann's suspended sentence imposed by the Board were not inconsistent with the conditions imposed by the sentencing court. In addition, Mann failed to establish an equal protection violation. He was not treated differently than a similarly situated class of inmates. We affirm.

[¶ 25.] GILBERTSON, Chief Justice, and ZINTER and SEVERSON, Justices, and KONENKAMP, Retired Justice, concur.

[¶ 26.] KERN, Justice, not having been a member of the Court at the time this action was assigned to the Court, did not participate.